**David CONDON, d/b/a White Knight Solid Waste Disposal, Plaintiff,**

**v.**

**ANDINO, INC., Andrew Marino, Town of Houton, and Allan Bean, Defendants.**

**Civil No. 96–0246–B.**

United States District Court,
D. Maine.

March 25, 1997.

Robert M. Morris, Carton, Davis & Morris,
P.A., Brunswick, ME, for Plaintiff.

Phillip D. Buckley, Rudman & Winchell, Bangor, ME, for Defendants Marino & Andino.

Daniel R. Nelson, Severson, Hand & Nelson, Houlton, ME, Michael E. Saucier, Thompson & Bowie, Portland, ME, for Defendants Bean & Houlton.

## ORDER GRANTING PRELIMINARY INJUNCTION

BRODY, District Judge.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, David Condon, requests that the Court enjoin Defendants, Andino, Inc. (hereinafter "Andino"), the Town of Houlton (hereinafter "Houlton" or' "the Town"), Andrew Marino, and Allan Bean from enforcing the Town's Solid Waste Management Ordinance (hereinafter the "Ordinance") and the solid waste contract between the Town and Andino. For the reasons set forth below, the Court finds that Houlton's Ordinance is substantively similar to the flow control ordinance held unconstitutional by the Supreme Court in *C & A Carbone Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 393–401, 114 S.Ct. 1677, 1684–1687, 128 L.Ed.2d 399 (1994). For this reason, and because Plaintiff satisfies the other First Circuit requirements for an injunction, a Preliminary Injunction is hereby issued.

### I. Background

Houlton does not provide waste collection services at the Town's expense, therefore, residents must either pay to have their waste transported to the Town's designated waste transfer station, or they may take it to the transfer station themselves. Plaintiff, owner of White Knight Solid Waste Disposal, holds a license, issued by Houlton, granting him the right to collect and haul commercial and residential waste within the Town.[1] In 1995, Houlton enacted a new Ordinance that provides that all residential solid waste generated within the Town must be taken to a waste processing transfer station established by the private contractor chosen by Houlton to process the solid waste produced within the Town × Commercial waste hauling companies violating the Ordinance are subject to fine for each offense and may be forced to pay any related costs and attorneys' fees. *See Houlton, Maine, Solid Waste Management Regulations, art. V: § 10–503.*

Houlton granted Defendant, Andino, the exclusive franchise to process the Town's solid waste, hence, Andino is the owner of the transfer station that is the only authorized disposal site for residential waste produced in Houlton. Andino charges a tipping fee for all waste disposed of at its transfer station. This tipping fee is determined based on the amount of waste presented at the transfer station for disposal.

In an attempt to assure compliance with the Town's requirement that all residential waste be processed at the Andino transfer station, Andino requires that all commercial haulers present a list of their residential clients prior to use of the transfer station. If a hauler such as Plaintiff does not turn over its customer list to Andino, the hauler will not be allowed to deposit waste collected from its clients at the Town's authorized transfer station. Plaintiff refuses to disclose his customer list to either Andino or the Town, arid, as part of this suit, asks the Court to enjoin Defendants from enforcing the Ordinance.

### II. Preliminary Injunction Standard

For the Court to grant Plaintiff's Motion for Preliminary Injunction, Plaintiff must establish the following four elements: first, that he has a likelihood of success on the merits; second, that he will suffer irreparable harm if the injunction is not granted; third, that his injury outweighs any harm that granting injunctive relief would inflict on the Defendants; and fourth, that the public interest will be served by granting the preliminary injunction. *See, e.g., AFL–CIO*

---

1. Specifically, the Ordinance, states, in pertinent part, that:
   the town or the contractor of the town shall designate any exclusive disposal site or sites for disposal of solid wastes generated within the boundaries of the town. The disposal of the solid waste generated within the town by any waste generator at any place other than at the disposal site(s) is prohibited.

   Houlton, Maine, Solid Waste Management Regulations, art. V, § 10–504.

*Laundry and Dry Cleaning Int'l Union v. AFL–CIO Laundry,* 70 F.3d 717, 718 (1st Cir.1995); *Gately v. Commonwealth of Massachusetts,* 2 F.3d 1221, 1224 (1st Cir.1993), *cert. denied,* 511 U.S. 1082, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994).

### A. Likelihood of Success On the Merits

Plaintiff argues that Houlton's Ordinance is in violation of the Commerce Clause of the Constitution. U.S. Const. art. I, § 8, cl. 3. More specifically, Plaintiff claims that Houlton's Ordinance is unconstitutional under the dormant Commerce Clause.

■ The Commerce Clause grants Congress the authority "[t]o regulate Commerce. among the several States...." *Id.* This broad grant of power confers upon Congress the authority to pass laws that affect commerce between the states even when the effect of the laws on interstate commerce is quite attenuated. *E.g., Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In addition to this grant of authority, the Commerce Clause is a limitation on the power of the states to regulate commerce. In other words, in the absence of Congressional action, the dormant Commerce Clause acts to limit state power to regulate. The Supreme Court recently opined that:

> [t]hough phrased as a grant of regulatory power to Congress, the [Commerce] Clause has long been understood to have a "negative" aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.

*Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality,* 511 U.S. 93, 98, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994) (citing *Wyoming v. Oklahoma,* 502 U.S. 437, 454, 112 S.Ct. 789, 800, 117 L.Ed.2d 1 (1992); *Welton v. Missouri,* 91 U.S. 275, 23 L.Ed. 347 (1876)); *see also Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979). There are certain recognized principles that dictate whether states can constitutionally regulate an activity in situations where Congress has not acted.[2]

■ In a decision authored by Justice Cardozo, the Supreme Court held that the Commerce Clause prohibited state regulation:

> when the avowed purpose of [the state law] as well as its necessary tendency, is to suppress or mitigate the consequences of competition between the states.

*Baldwin v. GAF Seelig, Inc.,* 294 U.S. 511, 522, 55 S.Ct. 497, 500, 79 L.Ed. 1032 (1935) Under the Court's dormant Commerce Clause analysis, "one state in its dealings with another may not place itself in a position of economic isolation." *Id.* at 527, 55 S.Ct. at 502. Even in situations where a state has significant social welfare goals that mandate regulation, it cannot erect barriers to the free flow of commerce, and competition, between the states. The Court summarized this area of Constitutional analysis, stating that:

> [t]he Constitution was framed under the domain of a political philosophy less parochial in range. It was framed upon the theory that the people of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division.

*Id.* at 523, 55 S.Ct. at 500. In an often quoted passage on this issue, Justice Jackson wrote that:

> [o]ur system, fostered by the Commerce Clause, is that every farmer and every craftsman shall be encouraged to produce by the certainty that he will have free access to every market in the Nation, that no home embargoes will withhold his exports, and no foreign state will by customs duties or regulations exclude them. Likewise, every customer may look to the free competition from every producing area in the Nation to protect him from exploitation by any.

*H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 539, 69 S.Ct. 657, 665, 93 L.Ed. 865 (1949).

---

**2.** If Congress has passed a law, or laws, regulating the activity in question, the Supremacy Clause dictates that federal law supersedes conflicting, and even, sometimes, overlapping, state laws. U.S. Const. art. VI; *Jones v. Rath Packing Co.,* 430 U.S. 519, 525–526, 97 S.Ct. 1305, 1309–1310, 51 L.Ed.2d 604 (1977).

Whether Plaintiff has a likelihood of success on the merits in this preliminary injunction proceeding is based upon three separate determinations. The Court must decide, first, whether processing and disposing of waste is an activity that has an impact on interstate commerce; second whether the Town is participating in or regulating the market; and, third, whether the Ordinance discriminates against interstate commerce. *Carbone* provides the appropriate analytical framework for these determinations

### 1. Impact On Interstate Commerce

■ Defendants argue that the activity under review here, the processing and disposal of waste, has no impact on interstate commerce, hence, the Commerce Clause does not apply, and, therefore, the restrictions of the dormant Commerce Clause do not prohibit the Ordinance. Defendants assert that Plaintiff made no allegation that "the region is interstate in nature." Defendant's Response to Plaintiff's Motion for Preliminary Injunction at 9 (Jan. 8, 1997).

As noted above, the sweep of the Commerce Clause is extremely broad. *See, e.g., NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). Pursuant to *Wickard* and its progeny, the Supreme Court has interpreted the Commerce Clause to cover a significant range of activity. In essence, if the activity under review has almost any economic impact on interstate commerce, the Commerce Clause provides for Congressional authority over that activity. The Court stated in *Carbone* that:

[w]hile the immediate effect of the ordinance is to direct local transport of solid waste to a designated site within the local jurisdiction, its economic effects are interstate in reach.... Furthermore, even as to waste originant in Clarkstown, the ordinance prevents everyone except the favored local operator from performing the initial processing step. The ordinance thus deprives out-of-state businesses of access to a local market. These economic effects are more than enough to bring the Clarkstown ordinance within the purview of the Commerce Clause. It is well settled that actions are within the domain of the Commerce Clause if they burden interstate commerce or impede its free flow.

*Carbone,* 511 U.S. at 389, 114 S.Ct. at 1681 (citing *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 31, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937)). While it is true that there was more evidence in *Carbone,* than in this case, that the waste transfer station at issue processed waste from places other than Clarkstown, including out of state, this does not distinguish *Carbone* from the case before the Court here. Given the Supreme Court's decisions in cases such as *Wickard* and *Jones & Laughlin Steel Corp.,* this Court is persuaded that the economic effects of Houlton's waste management laws are sufficient to bring the Ordinance under the coverage of the Commerce Clause.[3]

In *Carbone,* Justice Kennedy concludes that "[t]hough the Clarkstown ordinance may not in explicit terms seek to regulate interstate commerce, it does so nonetheless by its practical effect and design." *Carbone,* 511 U.S. at 394, 114 S.Ct. at 1684. The same is true of the Ordinance under review here.

### 2. Participation In or Regulation Of the Market

■ Defendant claims that Houlton's actions constitute market participation rather

---

**3.** In *U.S. v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Court held the Gun–Free School Zones Act of 1990 (hereinafter "the Act") unconstitutional, stating that the Act did not regulate a commercial activity or contain a requirement that the possession of a firearm be connected in any way with interstate commerce. *Id.* at 551, 115 S.Ct. at 1626. The Court, therefore, determined that the Act exceeded the authority of Congress "[t]o regulate Commerce ... among the several States...." *Id.* U.S. Const.

art. I, § 8, cl. 3. *Lopez* is unique since the New Deal as a case that invalidates Congressional action based on the restrictions of the dormant Commerce Clause, and it has not been read broadly by lower courts. *See, e.g., U.S. v. Bongiorno,* 106 F.3d 1027, 1032–33 (1st Cir.1997). *Lopez* does not reflect a significant change in Commerce Clause jurisprudence, and it does not support a finding that the Houlton waste control regulations are immune to the restraints of the Commerce Clause.

than market regulation. It is true that if a state is not acting in its regulatory capacity, but rather, is itself participating in the marketplace as a buyer or seller, the restrictions of the dormant Commerce Clause do not apply. *E.g., Reeves, Inc. v. Stake,* 447 U.S. 429, 436–439, 100 S.Ct. 2271, 2277–2279, 65 L.Ed.2d 244 (1980); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 809–810, 96 S.Ct. 2488, 2497–2498, 49 L.Ed.2d 220 (1976); *USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272, 1282–1283 (2nd Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996). The Supreme Court has explained that the dormant Commerce Clause "restricts 'state taxes and regulatory measures impeding free private trade in the national market place,' but there 'is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market.'" *Wisconsin Dep't of Indus., Labor & Human Relations v. Gould, Inc.* 475 U.S. 282, 289, 106 S.Ct. 1057, 1063, 89 L.Ed.2d 223 (1986) (quoting *Reeves, Inc. v. Stake,* 447 U.S. 429, 437, 100 S.Ct. 2271, 2277, 65 L.Ed.2d 244 (1980)). This case, however, does not present a situation where the Town is acting as a market participant. Houlton has not entered the market as a buyer or seller. It is acting as a regulator. Pursuant to the Town's regulations, all trash must be processed at Andino's transfer station, and if waste hauler's violate this requirement, fines and penalties can be imposed under the law. *See* Houlton, Main, Solid Waste Management Regulations, art. V, § 10–503. Such activity is not market participation as defined by the Supreme Court.

Houlton exercised its governmental regulatory powers by: (a) granting an exclusive franchise, or monopoly, to Andino to process the Town's solid waste and (b) imposing penalties on those violating the requirement that all trash be processed at Andino's transfer station. *See Carbone,* 511 U.S. at 402, 114 S.Ct. at 1688 (O'Connor, J., concurring) ("In effect, the town has given a waste processing monopoly to the transfer station.") No private actor could confer such a monopoly or impose a regulatory regimen to enforce the monopoly, hence, the Town is acting as a market regulator, not a market participant.

*See, e.g., SSC Corp. v. Town of Smithtown,* 66 F.3d 502, 512 (2nd Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 911, 133 L.Ed.2d 842 (1996).

### 3. Standard of Review Applicable

Since Houlton's actions do fall within the ambit of the Commerce Clause and the Town is acting as a market regulator, the final question is whether the dormant Commerce Clause prohibits the Ordinance under review. There are two levels of analysis to determine whether the Town's regulatory scheme is constitutional. Under the first, the Court must determine whether the ordinance discriminates against interstate commerce. If he answer to this question is yes, then strict scrutiny review is applied to the regulation. *Carbone* recounts the appropriate standard of review.

> Discrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest.

*Carbone,* 511 U.S. at 392, 114 S.Ct. at 1683 (citing *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)); *see also City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978) (State regulations that discriminate against interstate commerce are met with a "virtually *per se* rule of invalidity."). Discrimination is defined as "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys. Inc. v. Dep't of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994).

If the Court determines that the Ordinance does not discriminate against interstate commerce, then the Court must determine whether the Ordinance imposes a burden on interstate commerce that is "clearly excessive in relation to the putative local interests." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). This second question need only be addressed if the first

question is answered in the negative. In *Carbone*, the Court determined that "[a]s we find that the ordinance discriminates against interstate commerce, we need not resort to the Pike test." *Carbone*, 511 U.S. at 390, 114 S.Ct. at 1682.

Defendants in this case cannot persuasively contradict the fact that the ordinance held unconstitutional in *Carbone* is remarkably similar, indeed identical in its effect, to the Ordinance before the Court here.[4] The *Carbone* ordinance required that all solid waste generated within the town be processed at the transfer station owned by the local private contractor that was granted the exclusive franchise by the town. The Supreme Court has determined that it was not the garbage itself that generates a profit but rather the fact that people who produce garbage must pay to dispose of it. *Id.* at 389, 114 S.Ct. at 1682. Therefore, the actual article of commerce is not the solid waste but the service of processing and disposing of it. *Id.* The Court concluded that the *Carbone* flow control ordinance discriminated against interstate commerce because it allowed one favored local processor the exclusive right to process waste generated within the Town. The Court also held that the Town's ordinance was no less discriminatory simply because local processors, as well as out-of-state processors, were bound by the prohibitions imposed under the law. *Id.* "In this light, the flow control ordinance is just one more instance of local processing requirements that we long have held invalid." *Id.* (citations omitted), The Houlton Ordinance cannot be substantively distinguished from the *Carbone* flow control ordinance. It requires that all waste generated in the Town be processed at Andino's transfer station.[5] All other processors are excluded from processing Houlton's solid waste, and those choosing to violate the Ordinance are punished under the Town's regulations.

Defendants argue that *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272 (2nd Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996), is more applicable to the Houlton situation than *Carbone*. In *Town of Babylon*, the town took over the local collection and disposal businesses by contracting with a hauling and an incineration business. *Id.* at 1283, 1291. No private haulers or processors, other than the hauler and processor chosen by Babylon, could enter the garbage collection and processing businesses. Instead the town, through the two chosen contractors, provided its citizens with exclusive collection and disposal services. *Id.* After holding that Babylon's actions regarding garbage collection constituted market regulation, the Second Circuit determined that the town's regulations did not discriminate against interstate commerce because there was no favoritism of in-state over out-of-state haulers.[6] *Id.* at 1283. The critical difference between *Town of Babylon* on the one hand and *Carbone* and the Houlton Ordinance on the other is that, in *Town of Babylon*, no garbage collector—such as Plaintiff—is forced to purchase solid waste processing services from a local provider. As stated by the Second Circuit:

4.  Plaintiff's argument is also supported by recent Supreme Court determinations holding that local regulation of solid waste is generally struck down under the dormant Commerce Clause. The Court has been largely unmoved by arguments to validate local solid waste regulations on the grounds of local health and safety considerations in cases where the regulations present barriers to the free flow of interstate commerce. *See, e.g., Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Nat'l Resources*, 504 U.S. 353, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992); *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992); *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

5.  Defendants appear to claim that the Houlton Ordinance is unlike the ordinance struck down in *Carbone* because it only applies to residential waste, rather than both residential and commercial waste. *See* Defendants' Response to Motion for Preliminary Injunction at 13, 15 (Jan. 8, 1997). However, Defendants have offered, and the Court has uncovered, no support for the materiality of this distinction.

6.  With regard to Babylon's relationship with the solid waste processor, the court determined that the town was acting as a market participant, therefore, the limitations imposed by the dormant Commerce Clause did not apply. *Id.* at 1291.

[n]o one enjoys a monopoly position selling garbage collection services in Babylon's commercial garbage market, because the Town has eliminated the market entirely ... Babylon's waste management plan thus differs dramatically from the flow control ordinances struck down by the Supreme Court in *Carbone* and by this court in *SSC Corp.* In both of those cases, the challenged flow control ordinances required local garbage haulers to buy processing and disposal services from a local facility. In Babylon, local businesses do not buy services from anyone. Instead, the Town unilaterally provides garbage service to everyone in the District.

*Id.* at 1283 (citation omitted). In this case, unlike *Town of Babylon,* Plaintiff and other solid waste haulers are permitted by the Town to supply garbage collection services but forced by the Ordinance to use Andino's processing service. *Carbone,* therefore, is more factually analogous to the situation before the Court here.

Defendants attempt to distinguish the Houlton Ordinance from the ordinance struck down in *Carbone.* They claim that the Ordinance does not dictate the actual location of the processing or disposal of waste generated within the Town.[7] Presumably, this is because, once Andino was chosen as the exclusive waste processor, it was Andino who determined where the transfer station would be physically located. Although this, in fact, is a difference between the *Carbone* and the Houlton regulations, it does not remove the Houlton Ordinance from the logic of *Carbone.*[8] The act of granting and enforcing an exclusive franchise to a local waste processor created the constitutional infirmity with which the Supreme Court was

primarily concerned in *Carbone.* Justice Kennedy felt that "[t]he essential vice in laws of this sort is that they bar the import of the processing service." *Carbone,* 511 U.S. at 392, 114 S.Ct. at 1683. The Houlton Ordinance does just that. Houlton's solid waste must flow through Andino's facility, to the exclusion of all other processors.

Defendants also claim that, because the length of Andino's franchise is limited to seven years, other bidders, including Plaintiff, can at various times attempt to become the exclusive franchisee granted the right to process Houlton's solid waste However, the fact that there is a bidding process for all interested in obtaining the exclusive right to process waste generated within Houlton's boarders and that the exclusive license is time-limited does not distinguish the Town's Ordinance from the one struck down in *Carbone.* The Town's Ordinance controls the flow of trash through a local waste processor to the exclusion of all competition. Such a restriction discriminates against interstate commerce and, therefore, is unconstitutional absent a significant showing by the municipality that it has no other means to advance its local interests.

### 4. Standard of Review Applied

■ Since the Ordinance discriminates against interstate commerce, it is *per se* invalid, unless the Town can demonstrate "under rigorous scrutiny" that it has no other means at its disposal to advance its legitimate local interest. *Carbone,* 511 U.S. at 391, 114 S.Ct. at 1683. This test creates a difficult decision for the Court. Houlton obviously has a significant interest in assuring the safe and efficient disposal of its citizens'

---

7. Defendants claim that:
    [t]he ordinance neither on its face nor in application directs or controls the location of the processing or the location of disposal. These are matters within the sole action of the contractor—Andino, Inc.
Defendant's Response to the Motion for Preliminary Injunction at 8 (Jan 8, 1997).

8. In *Carbone,* the ordinance specified the actual address of the ordained waste transfer station as the:
    solid waste facility situate at Route 303, West Nyack, New York and such other sites, situate

in the Town, as may be approved by the Town for recycling, processing or other disposition or handling of acceptable solid waste.
*Carbone,* 511 U.S. at 395, 114 S.Ct. at 1685. The Houlton Ordinance requires that all solid waste generated within the Town be disposed of at the "exclusive disposal site or sites" designated by the Town or the Town's contractor. *See* Houlton, Maine, Solid Waste Management Regulations, art. V, § 10–504. The decision of where to physically locate the transfer station apparently was left to Andino.

solid waste. In this case, Houlton, until October 17, 1995, operated a Town dump where its citizens could dispose of solid waste at no charge, As of October, 1995, however, this dump was permanently closed pursuant to an order by the Maine Department of Environmental Protection The regulatory scheme that spawned this litigation is a product of the Town's attempts to responsibly dispose of is waste. However, *Carbone* is once again a significant roadblock to Defendants' arguments. In that case, there were *amici* briefs filed with the Supreme Court contending that flow control ordinances fit into the narrow class of cases that pass the Court's strict scrutiny test. *Id.* at 391, 114 S.Ct. at 1683.

> [These *amici* briefs] suggest that as landfill space diminishes and environmental cleanup costs escalate, measures like flow control become necessary to ensure the safe handling and proper treatment of solid waste.

> The teaching of our cases is that these arguments must be rejected absent the clearest showing that the unobstructed flow of interstate commerce itself is unable to solve the local problem.

*Id.* at 392–393, 114 S.Ct. at 1683. Environmental concerns are frequently insufficient to overcome the strict scrutiny standard. *See* Footnote 4, above. In this case, Defendants' proffered state interests are insufficient to justify the local Ordinance in light of its discrimination against interstate commerce.

The Court is certainly cognizant of the practical, financial, and environmental difficulties faced by communities such as Houlton as they attempt to safely regulate waste disposal within their towns. Houlton, where the local dump was shut down by the State environmental agency, is a stark example of the "Catch 22" faced by many communities. There is, however, no principled distinction that can be drawn between the regulatory scheme before the Court here and that struck down by the Supreme Court in *Carbone*. Plaintiff, therefore, has established a likelihood of success on the merits of this case.

**B. Irreparable Harm**

██ Plaintiff will suffer irreparable harm if a preliminary injunction does not issue in this case. In addition to the likely finding of unconstitutionality of the Ordinance, Plaintiff is faced with the decision of either complying with regulations that are unconstitutional or violating his Town's laws. Plaintiff is currently unable to engage in his livelihood unless he turns over his customer list and pays Andino's tipping fees. If Plaintiff violates the Ordinance, he risks fines or other penalties. Plaintiffs reputation within the community is also suffering due to his inability to dispose of the solid waste that he collects, resulting in his failure to meet his contractual obligations to customers. In addition, Plaintiff claims that, if he is required to disclose his customer list to either the Town or Andino, as the Ordinance requires, he will lose his customers to Andino, who is a competitor in the waste hauling business. Absent a preliminary injunction, Plaintiff will likely be forced to terminate his residential waste hauling business. Plaintiff, therefore, satisfies the irreparable injury prong of the preliminary injunction test.

**C. Balancing of Injury**

██ The harm to Plaintiff if a preliminary injunction is not issued is significant. As noted above, it is irreparable. Although Defendants are clearly harmed by the issuance of a preliminary injunction, such harm is not as significant. Andino will still remain in business, and the citizens of Houlton will still have access to Andino's waste processing facility. The balance of injury, therefore, tips in favor of Plaintiff.

**D. Public Interest**

██ Given the likely unconstitutionality of Houlton's flow control Ordinance, the public interest is best served by the issuance of a preliminary injunction. It is hard to conceive of a situation where the public interest would be served by enforcement of an unconstitutional law or regulation.

**III. Conclusion**

Plaintiff's Motion for Preliminary Injunction is GRANTED, Defendants are hereby

preliminarily enjoined from enforcing: (a) Houlton's solid waste management Ordinance, to the extent that it is inconsistent with this Order, and (b) the solid waste services contract between Houlton and Andino, to the extent that this contract relates to the enjoined portions of the Ordinance.

No party has requested that security be posted pursuant to Rule 65(c), and none will be required by the Court.

*SO ORDERED.*