63 Cal.App.4th 1488 (1998)
WASTE MANAGEMENT OF ALAMEDA COUNTY, INC., Plaintiff and Respondent,
v.
BIAGINI WASTE REDUCTION SYSTEMS, INC., Defendant and Appellant.
Docket No. A077664.
Court of Appeals of California, First District, Division One.
April 21, 1998.
*1491 COUNSEL
Joseph L. Casalnuovo, Steefel, Levitt & Weiss, Barry W. Lee and Kevin D. Reese for Defendant and Appellant.
Duane W. Dresser, Otis & Hogan, J. Morrow Otis, Patrick J. Hogan, Crosby, Heafey, Roach & May, John Smith and Ezra Hendon for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
SWAGER, J.
We conclude in this appeal that the trial court did not err by issuing a preliminary injunction in favor of respondent based upon the terms of a constitutionally valid exclusive franchise waste collection ordinance, and affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Pursuant to statutory authority granted by the California Integrated Waste Management Act of 1989, the City of Oakland enacted an "Ordinance *1492 Amending in its Entirety Chapter 6, Article 4, of the Oakland Municipal Code, for Recycling and Solid Waste Disposal" (hereafter ordinance) in July of 1995 to create an exclusive franchise for collection and disposal of solid waste. (Pub. Resources Code, § 40000 et seq.)[1] According to the provisions of the ordinance, only the "solid waste and yard waste collector" (hereafter collector) franchised by the city is entitled to collect from single-family dwellings or transport upon city streets any "solid waste," with enumerated exceptions. A companion ordinance authorized the city manager to negotiate and enter into an exclusive franchise agreement with respondent to act as collector of solid waste, in exchange for payment by respondent of monthly franchise fees and "city fees."
A "Franchise Agreement for Solid Waste and Yard Waste Collection and Disposal Services" (hereafter agreement) between the city and respondent was executed on December 31, 1995. Paragraph 3.5 of the agreement granted respondent the franchise and right to collect, transport and process solid waste within the city in accordance with the provisions of the ordinance between December 1, 1995, and December 31, 2010. The franchise thus conferred upon respondent by the ordinance and agreement was "exclusive," except as to specified categories of materials, including "source separated recyclables," "construction debris" removed from the premises of *1493 a construction site by a licensed contractor, and solid waste hauled directly to a disposal facility or transfer station by the generator of the waste.[2]
On September 25, 1996, respondent filed a complaint for damages and declaratory and injunctive relief which alleged that appellant had contracted with others to collect and dispose of "construction debris generated within the City of Oakland" at specified locations in violation of the exclusive franchise provisions of the ordinance and agreement. An accompanying motion for preliminary injunction was supported by copies of the ordinance and agreement, along with declarations.
The supporting declaration of William Johnson, president of respondent, stated that as consideration for the exclusive franchise rights granted by the agreement, respondent forgave an existing debt owed to it by the city in the amount of $19 million, and agreed to pay annual franchise fees in excess of $16 million. J. Morrow Otis, an attorney for respondent, declared that appellant had been given notice to "cease and desist" the alleged acts violative of the agreement, but no response had been received. Stephen McCaffery, an "outside salesman" hired by respondent to investigate violations of the exclusive franchise agreement, declared that in response to a report from respondent's operations department, in August of 1996 he observed a "debris collection box" left by appellant which was "filled with construction debris" at a demolition site on 98th Avenue. According to information received by McCaffery from "knowledgeable" personnel, the debris box was thereafter taken by appellant and "emptied at the Davis Street Transfer Station" owned and operated by respondent. McCaffery also observed and photographed collection and disposal of construction debris by appellant at other locations in Oakland. He was informed that the loads brought to the Davis Street Transfer Station were recorded as "solid waste," for which the customers were charged "solid waste disposal fees."
As part of its opposition to the motion for preliminary injunction, appellant filed evidentiary objections to respondent's declarations on grounds that the material in them lacked proper authentication, and consisted of inadmissible opinions, conclusions or hearsay evidence. The evidentiary objections *1494 were considered but not ruled upon by the trial court in the order granting the motion for preliminary injunction. The injunction commands appellant to refrain from collecting or disposing of any solid waste within the city in violation of the terms of the ordinance and agreement. This appeal followed.

DISCUSSION
I.-III.[*]
.... .... .... .... .... .... .... .

IV. The Commerce Clause.

(1a) We proceed to appellant's constitutional challenges to the ordinance and agreement, the first being that the exclusive franchise arrangement violates the commerce clause. Appellant complains that by precluding any collection of garbage except by the "favored local contractor," the city has discriminated against out-of-state business to promote "local economic protectionism," thereby imposing an impermissible burden on interstate commerce.
(2) The commerce clause grants to Congress the power to "regulate commerce ... among the several states...." (U.S. Const., art. I, § 8, cl. 3; Kilroy v. Superior Court (1997) 54 Cal. App.4th 793, 808 [63 Cal. Rptr.2d 390].) "`[T]he Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States. In short, the Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States....' (Freeman v. Hewit (1946) 329 U.S. 249, 252 [91 L.Ed. 265, 67 S.Ct. 274]; see also Southern Pacific Co. v. Arizona (1945) 325 U.S. 761, 769...." (Barclays Bank Internat., Ltd. v. Franchise Tax Bd. (1992) 2 Cal.4th 708, 722 [8 Cal. Rptr.2d 31, 829 P.2d 279].) "In this respect, the commerce clause resembles the supremacy clause in that it, albeit indirectly, `defines the relative powers of states and the federal government.' ([San Diego Unified Port Dist. v. Gianturco (S.D.Cal. 1978) 457 F. Supp. 283, 290, affd. 651 F.2d 1306, cert. den., 455 U.S. 1000 [71 L.Ed.2d 866, 102 S.Ct. 1631]].)" (Star-Kist Foods, Inc. v. County of Los Angeles (1986) 42 Cal.3d 1, 9 [227 Cal. Rptr. 391, 719 P.2d 987].)
(3) The limitation on the power of the states to act, referred to as the "dormant" commerce clause doctrine, subjects local legislation to a two-pronged inquiry: First, if a state law or local regulation discriminates against *1495 interstate commerce in favor of local business or investment, it is per se invalid, save a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest. Second, nondiscriminatory regulations that impose only incidental effects on interstate commerce are subject to a less rigorous balancing test under which the law is valid unless the burden so imposed is clearly excessive when balanced against the intended local benefits. (Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore. (1994) 511 U.S. 93, 99 [114 S.Ct. 1345, 1350, 128 L.Ed.2d 13]; Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources (1992) 504 U.S. 353, 359 [112 S.Ct. 2019, 2023-2024, 119 L.Ed.2d 139]; Hass v. Oregon State Bar (9th Cir.1989) 883 F.2d 1453, 1462.) "`Not every exercise of state power with some impact on interstate commerce is invalid. A state statute must be upheld if it "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental ... unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."' (Edgar v. [MITE] Corp]. (1982) 457 U.S. 624, 640 [73 L.Ed.2d 269, 282, 102 S.Ct. 2629, 2640]; Minnesota v. Clover Leaf Creamery Co. (1981) 449 U.S. 456, 471 [66 L.Ed.2d 659, 673, 101 S.Ct. 715]; Pike v. Bruce Church, Inc. (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 178, 90 S.Ct. 844].)" (Partee v. San Diego Chargers Football Co. (1983) 34 Cal.3d 378, 382 [194 Cal. Rptr. 367, 668 P.2d 674].)

A. Discrimination Against Interstate Commerce.

We must first determine whether the ordinance has a discriminatory impact upon interstate commerce, which in the context of a commerce clause analysis "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." (Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore., supra, 511 U.S. at p. 99 [114 S.Ct. at p. 1350]; Ben Oehrleins & Sons & Daughter v. Hennepin County (8th Cir.1997) 115 F.3d 1372, 1383; Sherwin-Williams v. City & County of San Francisco (N.D.Cal. 1994) 857 F. Supp. 1355, 1365.) A law may discriminate against interstate commerce on its face, in its purpose, or in its effect. (Ben Oehrleins & Sons & Daughter v. Hennepin County, supra, at p. 1383.)
(1b) Appellant relies on the United States Supreme Court opinion in C & A Carbone, Inc. v. Clarkstown (1994) 511 U.S. 383 [114 S.Ct. 1677, 128 L.Ed.2d 399] (hereafter Carbone) to argue that the ordinance directly and *1496 discriminatorily burdens interstate commerce. In Carbone, the court declared invalid a municipal "flow control ordinance" that required all private nonhazardous waste to be processed at a single designated transfer station. Under the flow control ordinance recyclers were forced to send sorted nonrecyclable waste residue to the local transfer station for processing, for a "tipping fee," rather than ship it elsewhere. Only the local operator of the transfer station was authorized to perform the initial processing step. (Id., at pp. 388-389 [114 S.Ct. at pp. 1681-1682].) Even waste received by recyclers from out of state was necessarily destined for the local transfer station for processing, thereby increasing the costs of interstate disposal of solid waste. Focusing upon the "service of processing and disposing" of the solid waste rather than the garbage itself, the court found that "... the flow control ordinance discriminates, for it allows only the favored operator to process waste that is within the limits of the town," (id., at p. 391 [114 S.Ct. at p. 1682]) and deprives out-of-state competitors of access to a local market while increasing "the cost for out-of-state interests to dispose of their solid waste." (Id., at p. 389 [114 S.Ct. at p. 1681].) The essential discriminatory element of the "protectionist" flow control ordinance, the court declared, was that it "squelches competition in the waste-processing service altogether, leaving no room for investment from [the] outside." (Id., at pp. 392-393 [114 S.Ct. at p. 1683]; see also SSC Corp. v. Town of Smithtown (2d Cir.1995) 66 F.3d 502, 514; Atlantic Coast Demo. v. Bd. of Chosen Freeholders (3d Cir.1995) 48 F.3d 701, 711-712; Condon v. Andino, Inc. (D.Me. 1997) 961 F. Supp. 323, 329-330; Atlantic Coast Demolition v. Chosen Freeholders (D.N.J. 1996) 931 F. Supp. 341, 345.)
Appellant maintains that the ordinance under scrutiny here similarly regulates the "service" of garbage hauling to the benefit of respondent as the exclusive franchise operator, at the expense of interstate competitors. The fact that the ordinance may burden interstate companies, however, does not alone establish discrimination against interstate commerce. The commerce clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." (Exxon Corp. v. Governor of Maryland (1978) 437 U.S. 117, 127-128 [98 S.Ct. 2207, 2215, 57 L.Ed.2d 91]; Kleenwell Biohazard Waste v. Nelson (9th Cir.1995) 48 F.3d 391, 397.) Unlike the flow control ordinance declared violative of the commerce clause in Carbone, the ordinance here regulates only solid waste generated and processed entirely "within the City." It imposes an exclusively intrastate restriction on the processing of waste. Moreover, the ordinance does not prevent citizens of the city from disposing of waste at any facility, even one located elsewhere and operated by an entity other than the collector. (Gary D. Peake Excavating v. Town Bd. of Hancock (2d Cir.1996) 93 F.3d 68, *1497 75.) And critically, out-of-state garbage collectors are not forced by the ordinance to purchase solid waste processing services from the local exclusive franchise provider. (Cf. Condon v. Andino, Inc., supra, 961 F. Supp. at p. 329.) Thus, it is not a flow control ordinance of the nature condemned in Carbone. (Gary D. Peake Excavating v. Town Bd. of Hancock, supra, 93 F.3d at p. 75.)
The ordinance is protectionist in its impact, but, in contrast to the legislation invalidated in Carbone, only at a local level, and so does not either increase or decrease the costs associated with interstate commerce in garbage collection. As the court in Ben Oehrleins & Sons & Daughter v. Hennepin County, supra, 115 F.3d at page 1385, declared in upholding a flow control restriction on waste generated and processed entirely within the county: "This may create a monopoly at the local level, but as long as waste is allowed to flow freely in or out of the state, this does not constitute discrimination against interstate commerce."
The ordinance also treats identically local and out-of-state garbage haulers. Both are effectively foreclosed from collecting or transporting garbage in the city if not designated as the "collector," and both may compete to obtain the exclusive franchise presently awarded to respondent. (Kleenwell Biohazard Waste v. Nelson, supra, 48 F.3d at pp. 397-398; Hass v. Oregon State Bar, supra, 883 F.2d at p. 1462.) Local processors and facilities are neither treated with more preference nor disadvantaged with respect to out-of-state competitors. The latter are not deprived of access to a local market. (Gary D. Peake Excavating v. Town Bd. of Hancock, supra, 93 F.3d at p. 75.) By the operation of the ordinance, all providers of trash collection services, wherever located, are treated "evenhandedly." (Sherwin-Williams v. City & County of San Francisco, supra, 857 F. Supp. at p. 1366.) "[T]here is no `differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.' [Citation.]" (Ben Oehrleins & Sons & Daughter v. Hennepin County, supra, 115 F.3d at p. 1385.)
In USA Recycling, Inc. v. Town of Babylon (2d Cir.1995) 66 F.3d 1272, the Town of Babylon enacted a waste management plan that retained a single private company to collect all commercial garbage, and another to operate an incinerator to dispose of the waste. No other private companies, local or out-of-state, were entitled to collect or process garbage in the town. (Id., at p. 1275.) The court found that the Babylon waste management plan "differs dramatically" from the flow control ordinance "struck down by the Supreme Court in Carbone," and "does not discriminate in any way against interstate *1498 commerce." (Id., at p. 1283; see also Gary D. Peake Excavating v. Town Bd. of Hancock, supra, 93 F.3d at p. 75.)
The ordinance here under consideration similarly does not prohibit the flow of interstate goods or services, place added costs on them, or distinguish between in-state and out-of-state companies in the retail market. Unlike laws found violative of the commerce clause, the ordinance does not have as its objective "local economic protectionism ... that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." (Carbone, supra, 511 U.S. at p. 390 [114 S.Ct. at p. 1682]; Sherwin-Williams v. City & County of San Francisco, supra, 857 F. Supp. at p. 1366.) We accordingly conclude that the ordinance and the associated agreement by which respondent became the exclusive franchise collector of solid waste generated and transported within the city has no impermissible discriminatory effect upon interstate commerce. (Gary D. Peake Excavating v. Town Bd. of Hancock, supra, 93 F.3d at p. 75; USA Recycling, Inc. v. Town of Babylon, supra, 66 F.3d at p. 1283; Ben Oehrleins & Sons & Daughter v. Hennepin County, supra, 115 F.3d at p. 1385; Kleenwell Biohazard Waste v. Nelson, supra, 48 F.3d at p. 399.) We proceed to an examination of the incidental burden imposed by the ordinance upon interstate commerce balanced against the benefits derived from the legislation. (93 F.3d at pp. 75-76.)

B. Balancing the Burdens and Benefits of the Ordinance.

(4) We must next balance the effects of the ordinance upon interstate commerce against the putative local benefits, and uphold the legislation unless the burden so imposed is "clearly excessive." (Pike v. Bruce Church, Inc. (1970) 397 U.S. 137, 142 [90 S.Ct. 844, 847, 25 L.Ed.2d 174]; Partee v. San Diego Chargers Football Co., supra, 34 Cal.3d at p. 382.) "The burden on interstate commerce will ordinarily be found unreasonable where the state regulation substantially impedes the free flow of commerce from state to state or governs `those phases of the national commerce which, because of the need of national uniformity, demand their regulation, if any, be prescribed by a single authority.' (Southern Pacific Co. v. Arizona (1945) 325 U.S. 761, 767 [89 L.Ed. 1915, 1923, 65 S.Ct. 1515].) The commerce clause permits only incidental regulation of interstate commerce by the states; direct regulation is prohibited. (Edgar v. Mite Corp. [(1982)] 457 U.S. 624, 641-643 [73 L.Ed.2d 269, 282-283, 102 S.Ct. 2629, 2640-2641].)" (Partee v. San Diego Chargers Football Co., supra, 34 Cal.3d at pp. 382-383.)
(5) We must also be cognizant of the rule: "When a state statute regarding safety matters applies equally to interstate and intrastate *1499 commerce, the courts are generally reluctant to invalidate [it] even if [it] may have some impact on interstate commerce. (People v. Hutchinson [(1989)] 211 Cal. App.3d Supp. 9, 13 [260 Cal. Rptr. 178].) In Bibb v. Navajo Freight Lines (1959) 359 U.S. 520, 524 [3 L.Ed.2d 1003, 1007, 79 S.Ct. 962], the United States Supreme Court embellished this rule by stating: `These safety measures carry a strong presumption of validity when challenged in court. If there are alternative ways of solving a problem, we do not sit to determine which of them is best suited to achieve a valid state objective. Policy decisions are for the state legislature, absent federal entry into the field. Unless we can conclude on the whole record that "the total effect of the law as a safety measure in reducing accidents and casualties is so slight or problematical as not to outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it" [citation] we must uphold the statute.' (Fn. omitted.)" (People v. Niebauer (1989) 214 Cal. App.3d 1278, 1287 [263 Cal. Rptr. 287]; see also People v. Hutchinson (1989) 211 Cal. App.3d Supp. 9, 13-14 [260 Cal. Rptr. 178].)
(1c) The ordinance does not directly regulate interstate commerce, and we find that the incidental burden it imposes is not clearly excessive in relation to the benefits obtained. (6) The regulation of solid waste collection by granting an exclusive franchise right is a proper exercise of the municipality's police power, and serves an important public interest by protecting against the hazards of indiscriminate or unsafe waste disposal. (Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources, supra, 504 U.S. at pp. 360-361 [112 S.Ct. at pp. 2024-2025]; Reduction Company v. Sanitary Works (1905) 199 U.S. 306, 320-321 [26 S.Ct. 100, 104, 50 L.Ed. 204]; USA Recycling, Inc. v. Town of Babylon, supra, 66 F.3d at p. 1293; Kleenwell Biohazard Waste v. Nelson, supra, 48 F.3d at pp. 399-400; Waste Resource Technologies v. Department of Public Health (1994) 23 Cal. App.4th 299, 310-311 [28 Cal. Rptr.2d 422]; City of Fresno v. Pinedale County Water Dist. (1986) 184 Cal. App.3d 840, 847 [229 Cal. Rptr. 275].) (1d) The ordinance, as we have observed, treats indiscriminately local and out-of-state concerns, imposing the same restrictions on each. (Gary D. Peake Excavating v. Town Bd. of Hancock, supra, 93 F.3d at p. 76.) The incidental burdens placed upon interstate commerce do not exceed the legitimate public health and safety benefits conferred by the legislation. (Ibid.) Accordingly, the ordinance does not violate the dormant commerce clause doctrine. (Ibid.)

*1500 V. Equal Protection.[*]
.... .... .... .... .... .... .... .
The judgment is affirmed. Costs are awarded to respondent.
Strankman, P.J., and Dossee, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of parts I., II., III., and V.
[1] All further statutory references are to the Public Resources Code unless otherwise indicated.

Section 40001 provides that "... the responsibility for solid waste management is a shared responsibility between the state and local governments," and section 40002 further states that "... it is in the public interest for the state, as sovereign, to authorize and require local agencies, as subdivisions of the state, to make adequate provision for solid waste handling ... consistent with the policies, standards, and requirements of this division and all regulations adopted pursuant to this division." As pertinent here, section 40059, subdivision (a), specifically authorizes the implementation by local governmental agencies of either exclusive or nonexclusive franchises for the handling and disposal of solid waste, as follows: "Notwithstanding any other provision of law, each county, city, district, or other local governmental agency may determine all of the following: [¶] (1) Aspects of solid waste handling which are of local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services. [¶] (2) Whether the services are to be provided by means of nonexclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or if, in the opinion of its governing body, the public health, safety, and well-being so require, by partially exclusive or wholly exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding. The authority to provide solid waste handling services may be granted under terms and conditions prescribed by the governing body of the local governmental agency by resolution or ordinance."
Section 40059, subdivision (a)(2), "authorizes cities to grant exclusive franchises for solid waste handling services." (Waste Management of the Desert, Inc. v. Palm Springs Recycling Center, Inc. (1994) 7 Cal.4th 478, 481 [28 Cal. Rptr.2d 461, 869 P.2d 440].)
[2] The definitions found in the agreement are consistent with those stated in the ordinance, as are the described materials excepted from the scope of the exclusive franchise agreement. "Source separated recyclables" are defined in the ordinance and agreement as recyclables "that have been segregated from solid waste by or for the generator thereof on the premises at which they were generated for handling in a manner different from that of solid waste," but not loads that consist of (1) mixed paper and contain more than 10 percent by weight of nonrecyclable materials, or (2) commingled recyclables other than mixed paper and contain more than 5 percent by weight of nonrecyclable materials.
[*] See footnote, ante, page 1488.