**HOULTON CITIZENS' COALITION, William J. Faulkner, d/b/a Jack's Trash Removal, Fred Spellman, d/b/a Spellman Light Trucking, and David Condon, d/b/a White Knight Solid Waste Disposal, Plaintiffs,**

v.

**TOWN of HOULTON, Defendant.**

**No. CIV. 97–0216–B.**

United States District Court,
D. Maine.

Oct. 20, 1997.

Robert M.Morris, Carton, Davis, & Morris, P.A., Brunswick, ME, for Plaintiffs.

William L. Plouffe, Drummond, Woodsum, Plimpton & Macmahon, Portland, ME, Daniel R. Nelson, Severson, Hand, & Nelson, Houlton, ME, Edmond J. Bearor, Rudman & Winchell, Bangor, ME, for Defendant.

### ORDER DENYING TEMPORARY RESTRAINING ORDER

BRODY, District Judge.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs, Houlton Citizens' Coalition, William J. Faulkner, d/b/a Jack's Trash Removal, Fred Spellman d/b/a Spellman Light Trucking, and David Condon, d/b/a White Knight Solid Waste Disposal, request that the Court enjoin Defendant, Town of Houlton ("Houlton" or "the Town"), from enforcing the Town's 1997 Solid Waste Management Ordinance ("Ordinance" or the "1997 Ordinance"). For the reasons set forth below, the Court DENIES Plaintiffs' Motion for a Temporary Restraining Order.

### BACKGROUND

In 1995, Houlton enacted a Solid Waste Management Ordinance (the "1995 Ordinance") that required all residential solid waste generated within the Town to be taken to a single waste processing transfer station owned by a private contractor chosen by

Houlton to process the Town's solid waste. Waste generators or commercial waste-hauling companies who violated this Ordinance were subject to fines, related costs, and attorneys' fees for each offense. *See* Houlton, Maine, Solid Waste Management Regulations, art. V, §§ 10–503 to 504 (1995). On March 25, 1997, this Court, ruling on a motion to enjoin enforcement of the 1995 Ordinance and the contract between Houlton and the owner of the designated transfer station, invalidated the 1995 Ordinance under the dormant Commerce Clause of the United States Constitution.

In direct response to this ruling, Houlton revised its Solid Waste Management Ordinance. The 1997 Ordinance provides that all residential refuse generated within the Town must either be made available by the town residents for collection by the Town or its contractor, or hauled by the resident to a disposal site designated by the Town Council. Residential refuse collected by the Town or its contractor may be disposed of at any lawful disposal site.[1] Houlton, Maine, Solid Waste Management Regulations, art. V, § 10–504 (1997) ("Ord."). Waste generators or commercial waste-hauling companies in violation of the new Ordinance are subject to fines and penalties for each offense. Ord. § 10–503.

Under the 1997 Ordinance, the Town may either collect and dispose of residential refuse itself, or issue an exclusive annual license to a commercial enterprise for the collection and disposal of residential waste. Ord. §§ 10–512 to 513. If the Town decides to contract with a commercial enterprise, all residential waste generators who wish to use the Town's residential refuse collection services must individually contract with this one designated hauler. Ord. § 10–507. The Town Council establishes the fees for residential refuse collection and disposal services, Ord. § 10–511; however, the contractor chosen by the Town directly bills and collects charges from the resident waste generators. Ord. § 10–510.

Pursuant to the Ordinance, Houlton has granted the exclusive contract to collect and haul residential refuse to Andino, Inc. ("Andino"). Houlton has, in effect, further designated Andino's transfer site to be the exclusive "disposal site" for residential waste in Houlton.[2] Until recently, Plaintiffs Faulkner, Spellman, and Condon held licenses granting them the right to collect and haul residential waste generated within the town. Along with Plaintiff Houlton Citizens' Coalition, a non-profit corporation consisting of residents of Houlton, Plaintiffs Faulkner, Spellman, and Condon contend that the 1997 Ordinance is unconstitutional under the dormant Commerce Clause. A hearing was held on Plaintiffs' Motion for a Temporary Restraining Order on October 10, 1997.

## STANDARD FOR INJUNCTIVE RELIEF

For the Court to grant Plaintiffs' Motion for injunctive relief, Plaintiffs must establish the following four elements: first, that they have a likelihood of success on the merits; second, that they will suffer irreparable harm if the injunction is not granted; third, that their injury outweighs any harm that granting injunctive relief would inflict on Defendant; and fourth, that the public interest will be served by granting the temporary restraining order. *See AFL–CIO Laundry*

---

1. Specifically, the Ordinance provides, in part:

   Town residents who do not use the residential refuse collection services of the Town or its franchisee or contractor shall dispose of their residential refuse at the disposal site designated by the Town Council.
   The disposal of residential refuse generated within the Town by any waste generator at any place other than at the disposal site designated by the Town Council is prohibited unless the refuse has been collected by the Town or its contractor, in which case it may be disposed of at any disposal site.
   Houlton, Maine, Solid Waste Management Regulations, art. V, § 10–504 (1997). By the term

"disposal site," the Town means a transfer station located within the Town. "Ultimate disposal, i.e., burial or incineration, of the waste occurs at whatever facility is chosen by the contractor.... In a sense, the transfer station is simply another step in the 'hauling process.'" Def.'s Mem. Opp. Pls.' Mot. T.R.O. at 3 n. 3.

2. Andino may, as the Town's contractor, dispose of residential waste at any disposal site for processing. In reality, however, since Andino owns the designated disposal site and operates at least a portion of this site under contract with the Town, Andino will undoubtedly bring the waste to this disposal site.

*and Dry Cleaning Int'l Union v. AFL–CIO Laundry,* 70 F.3d 717, 718 (1st Cir.1995); *Women's Community Health Ctr. Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979).

■ The Court finds that Plaintiffs have not satisfied the first requirement for injunctive relief, a likelihood of success on the merits, and, therefore, does not reach the other three elements.

## A. Likelihood of Success on the Merits

As discussed in more detail in this Court's March 25, 1997 Order, while the Commerce Clause is "by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South–Central Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 87, 104 S.Ct. 2237, 2240, 81 L.Ed.2d 71 (1984). In other words, even in the absence of a conflicting federal statute, the "dormant" Commerce Clause limits state power to regulate. *See Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979).

In order to determine whether or not Plaintiffs have demonstrated a likelihood of success, the Court must make three determinations. "The Court must decide, first, whether [the collection], processing and disposing of waste is an activity that has an impact on interstate commerce; second, whether the Town is participating in or regulating the market; and, third, whether the Ordinance discriminates against interstate commerce." *Condon v. Andino, Inc.,* 961 F.Supp. 323, 327 (D.Me.1997).

■ The parties do not dispute that Houlton's 1997 Ordinance has an impact on interstate commerce. The question, however, of whether the Town is acting as a market participant or a market regulator is at issue. "[I]f a state is not acting in its regulatory capacity, but rather, is itself participating in the marketplace as a buyer or seller, the restrictions of the dormant Commerce Clause do not apply." *Id.* at 328 (citing *Reeves, Inc. v. Stake,* 447 U.S. 429, 436–39, 100 S.Ct. 2271, 2277–79, 65 L.Ed.2d 244

(1980)). "A state's actions constitute 'market participation' only if a private party could have engaged in the same actions." *SSC Corp. v. Town of Smithtown,* 66 F.3d 502, 512 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 911, 133 L.Ed.2d 842 (1996).

Houlton's 1997 Ordinance sets up a program for the collection, disposal, and processing of residential solid waste. For purposes of determining if the Town has acted as a market regulator or market participant, it is helpful to analyze this program by dividing it into two parts. First, the Town has decided to require all town residents either to put out their trash for collection by the Town or its exclusive contractor or haul their own waste to a designated disposal site. Second, the Town has decided to issue an exclusive license to a commercial enterprise for the collection and disposal of residential waste, and to contract with a commercial enterprise to provide processing services for this waste.

The Court is persuaded that Houlton's actions with respect to the first part of the program constitute market regulation. The Town has essentially taken over the local commercial garbage collection, disposal, and processing markets, and exercised its regulatory powers by: (a) forbidding anyone other than the Town or its contractor to collect residential waste; (b) requiring residents who choose not to use the Town's collection services to haul their own waste to a designated transfer site; and (c) imposing penalties and fines on those residents or commercial waste-hauling companies who violate the above requirements. Ord. §§ 10–503 to 504. No private party could have imposed and enforced such a regime. As a result, the Town's actions constitute market regulation, subject to the limitations of the dormant Commerce Clause. *See USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272, 1282 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996) (Town of Babylon took over and therefore "regulated" local commercial garbage collection market by denying licenses to all garbage haulers other than haulers chosen to contract with Town, and enforcing this regulation with civil and criminal penalties).

■ To the extent that the Town has decided to contract with one local commercial enterprise for the collection, disposal, and processing of residential waste, however, the Court finds that Houlton is acting as a market participant. In *Town of Babylon*, 66 F.3d at 1275, the Second Circuit upheld a waste management scheme in which the Town of Babylon, through two chosen contractors, provided its citizens with exclusive collection and processing services. While the court found Babylon's decision to eliminate the commercial garbage collection market to be market regulation, the court found the process the town used to select one particular garbage hauler to be market participation. *Id.* at 1289. The court noted that Babylon had decided to provide garbage collection as a municipal service, and that once a local government decides to provide a municipal service it need not provide this service on its own. Rather, the local government can hire a private contractor to provide this service on the town's behalf. *Id.* By contracting out this service, the government becomes a "buyer" in the market for the service, and is permitted by the market participation doctrine "to hire whatever company it chooses, on whatever terms it chooses...." *Id.*[3]

Here, Houlton has similarly decided to eliminate the local garbage collection, disposal, and processing markets. Its decision to contract with Andino to collect the residential waste generated in the Town and to process this waste, therefore, constitutes market participation, free from the constraints of the dormant Commerce Clause. Houlton is acting as a "buyer" in the garbage collection, disposal, and processing markets, and enters those markets "with the same freedoms and subject to the same restrictions as a private party." *SSC Corp.*, 66 F.3d at 509.

■ Having concluded that Houlton's initial decision to provide its citizens with a uniform municipal garbage system constitutes market regulation, however, the Court must decide whether or not this decision discriminates against interstate commerce. If it does, the Court must apply strict scrutiny to it, since "[d]iscrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that is has no other means to advance a legitimate local interest." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y*, 511 U.S. 383, 392, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). If Houlton's decision does not discriminate against interstate commerce, then the Court must uphold it unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). "Discrimination is defined as 'differential treatment of instate and out-of-state economic interests that benefits the former and burdens the latter.'" *Condon*, 961 F.Supp. at 328 (quoting *Oregon Waste Sys., Inc. v. Dep't of Env. Quality*, 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994)).

Plaintiffs contend that by enacting the 1997 Ordinance, "the Town has compounded its prior violation of the Commerce Clause [the 1995 Ordinance]" by hoarding both "the right to process residential waste generated within the town—and also the very right to collect that residential waste, to the exclusion of all but Andino." Pls.' Mem. Supp. T.R.O. at 9. Plaintiffs argue that, like the 1995 Ordinance, this new Ordinance is unconstitutional because of the Supreme Court's decision in *Carbone*, 511 U.S. at 386, 394, 114 S.Ct. at 1680, 1684, where the Court invalidated, under the dormant Commerce Clause, a flow control ordinance requiring all solid waste generated in the town to be processed at a designated transfer station operated by a local private contractor.

The Court disagrees. The *Carbone* Court held that the flow control ordinance at issue

---

3. The *Town of Babylon* court held that Babylon's relationship with the contractor operating the incinerator also constituted market participation. *Id.* at 1291. The incinerator was owned by a "public benefits corporation" controlled by the Town. Under a service agreement between the Town and its chosen contractor, the Town paid a service fee for the operation of the incinerator. *Id.* at 1277–78. The court found that the Town was acting as a market participant in that it was "purchasing" incinerating services. As a result, the Town could use these services as it saw fit, and allow its chosen garbage hauler to dump town garbage there free of charge. *Id.* at 1291.

discriminated against interstate commerce by forcing all waste haulers to bring their waste to one local waste processor, thereby giving this processor a monopoly. *Id.* at 391, 114 S.Ct. at 1682–83. This Court invalidated Houlton's 1995 Ordinance on the ground that it was substantively similar to the ordinance in *Carbone.* *Condon,* 961 F.Supp. at 331. Houlton's 1997 Ordinance, however, is materially different from its 1995 Ordinance. Specifically, under the 1997 Ordinance, Town residents are no longer permitted to hire whomever they wish to collect and haul their waste. Rather, residents must either haul their waste themselves, or rely exclusively upon the Town or its contractor. The Court finds this Ordinance distinguishable from the flow control ordinance struck down in *Carbone,* and more factually analogous to the waste management process upheld by the Second Circuit in *Town of Babylon.*

As discussed briefly above, in *Town of Babylon,* a case decided after *Carbone,* Babylon hired one contractor to collect all of the commercial garbage in the town, and hired another contractor to operate an incinerator where that garbage was burned. No other private waste-haulers or processors could enter into the collection or processing businesses. *Town of Babylon,* 66 F.3d at 1275. The town financed this plan by assessing flat property taxes and user fees on commercial property owners. *Id.*

The court held that Babylon's decision to eliminate the commercial garbage collection market did not discriminate against interstate commerce. The court reasoned that the town's actions did not favor "in-state garbage haulers over out-of-state competitors," nor had the town impermissibly favored "a single local garbage hauler to the detriment of both in-state and out-of-state competitors" the way Clarkstown favored the local transfer station in *Carbone.* *Id.* at 1283. Instead, the court noted:

> No one enjoys a monopoly position selling garbage collection services in Babylon's commercial garbage market because the Town has eliminated the market entirely. Although the Town is now the lone provider of garbage collection services in the District, it does so as a local government

providing services to those within its jurisdiction not as a business selling to a captive consumer base. Babylon's waste management plan thus differs dramatically from the flow control ordinances struck down by the Supreme Court in *Carbone* and by this court in *SSC Corp.* In both of those cases, the challenged flow control ordinances required local garbage haulers to buy processing or disposal services from a local facility.

*Id.* at 1283.

The Court is persuaded by the *Town of Babylon* court's reasoning. In this case, just as in *Town of Babylon,* Houlton has chosen to provide residential garbage collection, disposal, and processing as municipal services. This Court stated in its March 25, 1997 Order that "[t]he critical difference between the *Town of Babylon* on the one hand and *Carbone* and the [1995] Houlton Ordinance on the other is that, in *Town of Babylon,* no garbage collector—such as Plaintiff—is forced to purchase solid waste processing services from a local provider." *Condon,* 961 F.Supp. at 329. Under the 1997 Ordinance, this difference no longer exists. Houlton residents are not forced to purchase collection services from Andino; rather, Houlton is the lone provider of such services and has hired Andino to furnish these services on its behalf subject to the Town's supervision and control. Andino, in turn, may dispose of this waste at any "lawful disposal site," and chooses to dispose of it at the designated transfer site that it operates under contract with the Town. Houlton's waste management plan, therefore, is substantially similar to the plan upheld in *Town of Babylon.*

The Court is additionally persuaded that requiring those Town residents who do not wish to use the Town's garbage collection service to bring their waste to Andino's transfer site does not constitute an impermissible forced purchase. This exception does not change the fact that Houlton is providing municipal services by collecting and processing the waste of all town residents, it just allows residents to opt out of the collection part of these services. *See Barker Brothers Waste, Inc. v. Dyer County Legislative Body,* 923 F.Supp. 1042, 1056 (W.D.Tenn.1996) (de-

**46**

termination of whether county is a participant or a regulator in the hauling and disposal markets is not affected by the fact that residents may choose not to participate in the program and instead bring their trash to "convenience centers," since "[t]his merely represents a political decision to allow program participants to shoulder the cost of solid waste disposal for the entire community").

Plaintiffs contend that the waste management plan in *Town of Babylon* is distinguishable from Houlton's plan because Babylon financed its plan through property taxes and user fees, whereas the 1997 Ordinance provides for the Town contractor to bill town residents directly. The Court acknowledges that this is a difference between the two waste management programs, however, it does not change the analysis or the outcome. Houlton's actions pass constitutional scrutiny under the dormant Commerce Clause because Houlton has eliminated the local trash collection, disposal, and processing markets. Whether the Town chooses to finance these municipal services through taxes or by allowing its chosen contractor to act as its agent and directly bill Town residents is the Town's choice. Moreover, as Defendant has noted, part of Babylon's scheme was funded by user fees, tied to the amount of garbage generated. *See Town of Babylon*, 66 F.3d at 1275. These fees are highly similar in practical effect to the fees charged directly by Andino. *See also, Barker Brothers Waste, Inc.*, 923 F.Supp. at 1056 (determination of whether or not county is a market participant in the waste hauling and disposal markets "should not turn on the county's decision to allow the trash carrier to charge its residents directly rather than imposing a use-tax upon its residents and then reimbursing BFI [the contractor] for the cost of the landfill space").

Finally, having found that Houlton's decision to provide its citizens with a uniform municipal garbage system does not discriminate against interstate commerce, the Court is persuaded that the Town's decision is constitutional under the dormant Commerce Clause because the burden it imposes on interstate commerce is not "clearly excessive in relation to the putative local benefits."

*See Pike,* 397 U.S. at 142, 90 S.Ct. at 847. As previously stated by this Court, "Houlton obviously has a significant interest in assuring the safe and efficient disposal of its citizens' solid waste." *Condon,* 961 F.Supp. at 330–31. Houlton's waste management plan will "assure its residents curbside collection, back door collection, ... and a viable recycling program at a reasonable price." Def.'s Mem. Opp. at 11.

In contrast, the institution of this uniform municipal garbage system does not appear to significantly or even moderately burden interstate commerce. In *Town of Babylon,* the court noted that there was "no reason to assume that by shifting all hiring of garbage haulers into the hands of one buyer [Babylon], the flow of interstate commerce will be reduced, and thereby burdened." *Town of Babylon,* 66 F.3d at 1287. The court held that just like individual buyers, Babylon "could have preferred a local garbage hauler to a nonlocal hauler, or vice versa for any reason." *Id.* Similarly, as the exclusive purchaser of collection and processing services, Houlton might prefer a nonlocal hauler or processor for a variety of reasons. At a minimum, any burden on interstate commerce arising out of the Town's decision to provide garbage collection and processing as municipal services would not be "clearly excessive" when compared with the benefits gained by the Town in implementing this system.

## CONCLUSION

The Court finds that the Town of Houlton's 1997 Solid Waste Management Ordinance does not violate the dormant Commerce Clause. Since Plaintiffs are unable to show a likelihood of success on the merits, their Motion for a Temporary Restraining Order is DENIED.

*SO ORDERED.*