HOULTON CITIZENS' COALITION
et al., Plaintiffs,

v.

TOWN OF HOULTON, Defendant.

No. CIV. 97–216–B.

United States District Court,
D. Maine.

June 29, 1998.

Robert M. Morris, Carton, Davis & Moris, Brunswick, ME, for Plaintiffs.

Daniel R. Nelson, Severson, Hand & Nelson, Houlton, ME, Edmond J. Bearor, Rudman & Winchell, Bangor, ME, Michael Saucier, Thompson & Bowie, Portland, ME, for Defendant.

ORDER AND MEMORANDUM
OF DECISION

BRODY, District Judge.

Plaintiffs, Houlton Citizens' Coalition, William J. Faulkner, d/b/a Jack's Trash Removal, Fred Spellman, d/b/a Spellman Light

Trucking, and David Condon, d/b/a White Knight Solid Waste Disposal, bring this 42 U.S.C. § 1983 action against Defendant, Town of Houlton ("Houlton" or the "Town"), challenging the Town's 1997 Solid Waste Management Ordinance ("Ordinance" or the "1997 Ordinance").[1] Plaintiffs allege that by enacting the Ordinance, Defendant violated their civil rights (Counts I, III, IV).[2] Plaintiffs also allege that Houlton violated its Town Charter by failing to solicit bids or notify the public before awarding, pursuant to the 1997 Ordinance, an exclusive contract to collect and dispose of residential waste to Andino, Inc. ("Andino"), a private firm (Count II). In its Order of October 20, 1997, the Court denied Plaintiffs' Motion for a Temporary Restraining Order, finding that Plaintiffs did not satisfy their burden of showing a likelihood of success on the merits with respect to whether the Ordinance violated the dormant Commerce Clause of the United States Constitution. Defendant now brings this Motion for Partial Summary Judgment against Plaintiffs on Counts I, II, and III (Civil Rights and Improper Contract Award) of Plaintiffs' Complaint. Plaintiffs also move for Partial Summary Judgment on Counts I and III (Civil Rights). For the reasons set forth below, the Court GRANTS Defendant's motion and DENIES Plaintiffs' Motion.

## I. BACKGROUND

Additional facts relevant to this dispute are set forth in the Court's Order of October 20, 1997. *See Houlton Citizens' Coalition v. Town of Houlton,* 982 F.Supp. 40, 41–42 (D.Me.1997). In 1995, Houlton enacted a Solid Waste Management Ordinance (the "1995 Ordinance") which required all residential solid waste generated within the Town to

be taken to a single waste processing transfer site owned by a private contractor chosen by the Town to process the Town's solid waste. In conjunction with this Ordinance the Town awarded Andino the exclusive contract ("Contract" or the "1995 Contract") to provide residential solid waste processing. Because the Contract did not confer upon Andino the exclusive right to collect residential solid waste, the Town amended the 1995 Ordinance to allow the licensing of other solid waste haulers. Pursuant to this amendment, individual Plaintiffs Faulkner, Spellman, and Condon received licenses granting them the right to collect and haul residential waste.

On November 6, 1996, David Condon filed suit in this Court alleging that the 1995 Ordinance was unconstitutional under the dormant Commerce Clause. On March 25, 1997, the Court issued an "Order Granting Preliminary Injunction," holding that Condon had established a likelihood of success on the merits with respect to his Commerce Clause claim. In direct response to this ruling, Houlton revised its Solid Waste Management Ordinance and enacted the 1997 Ordinance.

The 1997 Ordinance provides for the Town to collect and dispose of residential refuse itself, or issue an exclusive annual license to a commercial enterprise for the collection and disposal of residential waste. Houlton, Maine, Solid Waste Management Regulations, art. V, §§ 10–512 to 513 (1997) ("Ord."). All residential refuse must either be made available by the town residents for collection by the Town or its contractor, or hauled by the resident to a disposal site designated by the Town Council. Residential refuse collected by the Town or its contractor may be disposed of at any lawful

---

1. Although Plaintiffs also cite 42 U.S.C. §§ 1985 and 1986 in their Amended Complaint, the Court finds these sections inapplicable to this action because Plaintiffs have failed to allege a conspiracy to violate their civil rights.

2. Plaintiffs assert their civil rights claims in three separate counts. In Count I, Plaintiffs seek injunctive relief, restraining Defendant from enforcing the 1997 Ordinance. In Count III, individual Plaintiffs Faulkner, Spellman, and Condon seek monetary damages and costs related to their business operations from October 10, 1997, the

date the 1997 Ordinance became effective, to the present. In Count IV, individual Plaintiffs Faulkner and Spellman seek monetary damages and costs related to their business operations from October 17, 1995 to October 10, 1997. During this time period, Faulkner and Spellman allege, they operated their Houlton trash businesses in accordance with Houlton's 1995 Solid Waste Management Ordinance. On March 25, 1997, this Court found the 1995 Ordinance to be likely unconstitutional under the dormant Commerce Clause.

disposal site.[3] Ord. § 10–504. Noncompliance by waste generators or commercial waste-hauling companies is punishable by fines and penalties for each offense. Ord. § 10–503.

Under the preexisting 1995 Contract, Andino remains the Town's chosen contractor. Town residents, therefore, must use Andino to collect and haul their refuse, or haul their own refuse to Andino's disposal site. While Andino may dispose of the refuse it collects at any lawful site, Andino will undoubtedly bring the waste to its disposal site. Andino's transfer station is, in effect, the exclusive "disposal site" for residential waste in Houlton.

The 1997 Ordinance provides for the Town Council to establish the fees for residential collection and disposal services. Ord. § 10–511. Andino, as the Town's contractor, however, handles the billing and collection of these fees directly. Ord. § 10–510.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue of any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for summary judgment purposes, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed. R.Civ.P. 56(c). For the purposes of summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

**3.** By the term "disposal site," the Town means a transfer station located within the Town. Ultimate disposal, in other words burial or incinera-

## III. DISCUSSION

### A. Civil Rights—Counts I and III

Plaintiffs allege that the Town's 1997 Ordinance violates the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, the Contract Clause, U.S. Const. art. I, § 10, cl. 1, and constitutes an unlawful taking of Plaintiffs' property in violation of the Takings Clause of the Fifth Amendment. As a threshold issue, the Town argues that Plaintiff Houlton Citizens' Coalition, a Maine nonprofit corporation comprised of Houlton citizens, lacks standing to pursue these constitutional claims. Because the Court grants Defendant's Motion for Summary Judgment on Plaintiffs' civil rights claims, as discussed below, the Court does not reach the standing issue.

### 1. Dormant Commerce Clause

Plaintiffs renew their argument, first raised in their Motion for a Temporary Restraining Order, that the 1997 Ordinance impermissibly prohibits interstate competition in violation of the dormant Commerce Clause. Plaintiffs do not present any additional factual evidence pertinent to this issue. Rather, Plaintiffs reiterate their objection to the Court's reliance on the analysis used by the Second Circuit in *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272 (2d Cir.1995), *cert. denied*, 517 U.S. 1135, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996). As discussed in detail in the Court's Order of October 20, 1997, in *Town of Babylon*, the court upheld a waste management scheme in which the Town of Babylon, through two chosen contractors, provided its citizens with exclusive collection and processing services. *Id.* at 1275. The court distinguished Babylon's waste management plan from the waste management ordinance struck down by the Supreme Court in *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 391, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), finding that while the ordinance in *Carbone* required local waste haulers to buy processing or disposal services from one local facility, thereby giving this processor a monopoly, Babylon's plan did not require local businesses to buy

tion of the waste, occurs at a facility chosen by the contractor.

services from anyone because the Town had taken over the commercial garbage market. *Town of Babylon*, 66 F.3d at 1283. As the court stated:

> No one enjoys a monopoly position selling garbage collection services in Babylon's commercial garbage market because the Town has eliminated the market entirely.... Although the Town is now the lone provider of garbage collection services in the District, it does so as a local government providing services to those within its jurisdiction not as a business selling to a captive consumer base. Babylon's waste management plan thus differs dramatically from the flow control ordinances struck down by the Supreme Court in *Carbone* and by this court in *SSC Corp.* In both of those cases, the challenged flow control ordinances required local garbage haulers to buy processing or disposal services from a local facility.

*Id.*

The Court need not repeat its substantial discussion of this issue in its Order of October 20, 1997. The Court remains persuaded by the *Town of Babylon* court's reasoning, and is satisfied that the 1997 Ordinance is more factually analogous to the waste management plan upheld in *Town of Babylon*

than the ordinance struck down in *Carbone*.[4] Indeed, the 1997 Ordinance was a direct response to this Court's ruling that the 1995 Ordinance was likely unconstitutional under *Carbone*. Just as in *Town of Babylon*, Houlton has chosen to provide residential garbage collection, disposal, and processing as municipal services. Having made the decision to provide a uniform municipal waste system, Houlton has made the additional decision to hire a private contractor to furnish these services on its behalf, rather than provide these services itself. As the *Town of Babylon* court concluded:

> This case boils down to two simple propositions. First, towns can assume exclusive responsibility for the collection and disposal of local garage. Second, towns can hire private contractors to provide municipal services to residents. In neither case does a town discriminate against, or impose any burden on, interstate commerce. The local interests that are served by consolidating garbage service in the hands of the town—safety, sanitation, reliable garbage service, cheaper service to residents—would in any event outweigh any arguable burdens placed on interstate commerce.

The Court finds these "two simple propositions" determinative in this case as well.[5]

---

**4.** The Court is not persuaded by Plaintiffs' argument that the Supreme Court in *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) and *Wyoming v. Oklahoma*, 502 U.S. 437, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992), rejected the "two-step" analysis later applied by the Second Circuit in *Town of Babylon* and *SSC Corp. v. Town of Smithtown*, 66 F.3d 502 (2d Cir.1995), *cert. denied*, 516 U.S. 1112, 116 S.Ct. 911 (1996). Neither *West Lynn* nor *Wyoming* involved regulations similar to the waste management ordinances at issue here or in *Town of Babylon* and *SSC*. The *West Lynn* Court invalidated under the dormant Commerce Clause a Massachusetts pricing order which imposed an assessment on all fluid milk sold by dealers to Massachusetts retailers, with a redistribution of the entire assessment to Massachusetts dairy farmers. *West Lynn*, 512 U.S. at 206–07, 114 S.Ct. 2205. The Court held that it could not analyze the assessment independently of the redistribution because the assessment, raised primarily from out-of-state milk producers, funded the subsidy, which benefitted solely local farmers. *Id.* at 199–201, 114 S.Ct. 2205. Such a discriminatory funding scheme is not at issue here. In *Wyoming*, 502 U.S. at 454–55, 112 S.Ct. 789, the Court held that an Oklahoma regulation

which required all Oklahoma coal-fired electricity plants to burn at least ten percent Oklahoma-mined coal violated the dormant Commerce Clause. The Court does not find *Wyoming* relevant to the analysis here.

**5.** The Court also rejects Plaintiffs' argument that the Town's waste management plan violates the dormant Commerce Clause because the Town failed to solicit a new round of bids in connection with the revised 1997 Ordinance. For the reasons set forth in more depth in the Court's analysis of Plaintiffs' improper contract award claim, the Court is persuaded that the Town was not required to solicit additional bids for trash services in 1997. Plaintiffs do not challenge the original competitive bidding process in 1995 which resulted in Andino being selected as the Town's exclusive trash services provider. Moreover, the Court notes that even if the Town had favored Andino at the expense of out-of-state contractors, the Town would not run afoul of the dormant Commerce Clause because "the market participation doctrine permits the Town to hire whatever company it chooses, on whatever terms it chooses, to provide municipal services," without being subject to the constraints of the dor-

Therefore, the Court grants Defendant's Motion for Summary Judgment as it relates to Plaintiffs' challenge under the dormant Commerce Clause.

### 2. Takings Clause

█ Plaintiffs also contend that the enactment of the 1997 Ordinance constitutes a taking of their property without just compensation in violation of the Fifth Amendment to the United States Constitution. The Takings Clause of the Fifth Amendment provides, in pertinent part, "... nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. The Clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

The Court is satisfied that the Ordinance does not constitute an unlawful taking of Plaintiffs' property. In two 1905 decisions, the Supreme Court upheld challenges brought on takings grounds to municipal waste management ordinances in Detroit and San Francisco which, respectively, allowed a city contractor the exclusive right to collect and dispose of city garbage, and required that all garbage be delivered to one reduction plant for incineration. *See Gardner v. Michigan,* 199 U.S. 325, 330–31, 26 S.Ct. 106, 50 L.Ed. 212 (1905); *California Reduction Co. v. Sanitary Reduction Works,* 199 U.S. 306, 325, 26 S.Ct. 100, 50 L.Ed. 204 (1905). In both cases, the Court emphasized the municipalities' right to exercise their police powers in the interest of protecting the public safety, even if the ensuing regulations interfered with private property rights. *See California Reduction,* 199 U.S. at 323–24, 26 S.Ct. 100; *Gardner,* 199 U.S. at 331–32, 26 S.Ct. 106.

More recently, the First Circuit relied on *California Reduction* and *Gardner* in finding that a municipal flow control plan which required all acceptable waste to be delivered to a designated disposal facility did not constitute an unlawful taking of the plaintiffs' waste disposal business. *Tri–State Rubbish, Inc. v. Waste Management, Inc.,* 998 F.2d

mant Commerce Clause. *See Town of Babylon,*

1073, 1082 (1st Cir.1993). The court rejected the plaintiffs' argument that *California Reduction* and *Gardner* were outdated, and held that the municipality could lawfully impose regulations such as the flow control ordinance at issue for public purposes, even if these regulations "severely limit[ed] the value of an ongoing business." *Id.* at 1082. The Court, therefore, grants Defendant's Motion for Summary Judgment as it relates to Plaintiffs' Takings Clause claim.

### 3. Contract Clause

█ The third argument Plaintiffs make in support of their civil rights claim is that the 1997 Ordinance violates the Contract Clause, by interfering with Plaintiffs' contracts with their residential clients. The Contract Clause provides, in relevant part, that "no State shall ... pass any ... Law impairing the Obligation of Contracts ...." U.S. Const. art. I, § 10, cl. 1. "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kansas Power and Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983).

The threshold issue in an analysis under the Contract Clause is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Id.* at 411, 103 S.Ct. 697; *see also Mercado–Boneta v. Administracion del Fondo de Compensacion al Paciente,* 125 F.3d 9, 12 (1st Cir.1997). The First Circuit has further broken this inquiry down into three parts: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Mercado–Boneta,* 125 F.3d at 13 (quoting *General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). If the Court finds that a regulation does constitute a substantial impairment, the Court "will nevertheless uphold the law if it is 'reasonable and necessary to an important public purpose.'" *Id.* (quoting *United States Trust Co. v. New Jersey,* 431 U.S. 1, 25, 97 S.Ct. 1505, 52

66 F.3d at 1289.

L.Ed.2d 92 (1977)). When the contracts allegedly impaired by the regulations are private in nature, as is the case here, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* at 15, 97 S.Ct. 1505 (quoting *United States Trust Co.,* 431 U.S. at 22–23, 97 S.Ct. 1505). In contrast, courts accord less deference to a legislative determination when the contracts at issue are public in nature because, under those circumstances, the "States's self-interest is at stake." *Id.* at 15–16, 97 S.Ct. 1505 (citations omitted).

The Court is satisfied that the 1997 Ordinance does not violate the Contract Clause. In *Sal Tinnerello & Sons, Inc. v. Town of Stonington,* 141 F.3d 46, 55 (2d Cir.1998), the court rejected a Contract Clause challenge to a waste management ordinance similar to Houlton's 1997 Ordinance. The Town of Stonington ordinance provided for either the Town or its contractors to remove, transport, and dispose of all commercial solid waste generated within the Town, and imposed fines for noncompliance. *Id.* at 50. The court upheld the district court's denial of preliminary injunctive relief in favor of the plaintiff, a commercial waste hauler, holding that the plaintiff could not establish a likelihood of success on the merits. *Id.* at 52–55 (also finding that the plaintiff failed to show a likelihood of success on the merits with respect to whether the waste management plan violated the dormant Commerce Clause). While the court declined to decide the issue of whether the contractual relationships between the plaintiff and commercial waste generators were substantially impaired, the court held that even assuming such a substantial impairment did exist, the challenged ordinance was a reasonable and necessary means to Stonington's legitimate goals of "safety, efficiency, and equity in designing and implementing a waste management system." *Id.* at 53–55. According deference to the Town of Stonington's choice of waste management plans, the court found that the Town's decision "to take over collection and disposal of refuse as a municipal function was rationally related to the public purposes for which the law was enacted." *Id.* at 55.

The Court finds the *Sal–Tinnerello* court's reasoning persuasive. It is clear that the 1997 Ordinance has impaired the contractual relationships between the residential waste haulers and the residential waste generators. Assuming, for the purposes of summary judgment, that this impairment is substantial, the Court is persuaded that Plaintiffs' Contract Clause claim still fails under the remaining elements of the Contract Clause analysis. Contrary to Plaintiffs' argument that the purpose of the 1997 Ordinance is "merely to provide a favored local monopoly, Andino, with a[sic] supply of residential trash, that will assure Andino's economic viability," Pls.' Cross Mot. Partial Summ. J. at 15, the Preamble to the 1997 Ordinance indicates that Houlton's goals include "provid[ing] economies of scale that will result in lower per residence charges for these [residential refuse collection, hauling, and disposal] services," and "ensur[ing][the] reliable provision of collection and hauling services which will further the interest of public health and safety." Ord., Preamble. The Court finds these objectives to be legitimate and important public goals, and further finds the Town's decision to take over residential garbage collection, disposal, and processing as a municipal function to be a reasonable means of achieving these goals. *See Sal Tinnerello,* 141 F.3d 46, at 54–55. Because the Court rejects each of Plaintiffs' civil rights arguments, the Court grants Defendant's Motion for Summary Judgment on Counts I and III, and denies Plaintiffs' Motion for Summary Judgment as to the same Counts.

### B. Improper Contract Award—Count II

In Count II Plaintiffs contend that Houlton failed to solicit bids or notify the public of its intention to award an exclusive contract to collect and dispose of residential waste pursuant to the 1997 Ordinance. Plaintiffs acknowledge that in conjunction with the enactment of the 1995 Ordinance the Town released a Request for Proposals ("RFP"), seeking bids from private contractors for trash services. The RFP sought proposals for an exclusive franchise for "curbside" residential waste disposal, or a contractor who would collect trash from all

residential waste generators and dispose of such solid waste at any licensed facility chosen by the contractor. Andino emerged as the successful low bidder for this exclusive franchise. The 1995 Contract between the Town and Andino, however, ultimately permitted other solid waste haulers to collect residential solid waste so long as they delivered this waste to Andino's transfer station, and the Town later amended the 1995 Ordinance to allow for the licensing of additional residential solid waste haulers. Individual Plaintiffs Condon, Faulkner, and Spellman received licenses pursuant to this amendment and remained licensed until the 1997 Ordinance became effective.

When Houlton enacted the 1997 Ordinance in response to this Court's finding that the 1995 Ordinance was likely unconstitutional, the Town granted the exclusive contact to collect and haul residential solid waste to Andino, by amending the Ordinance so as to provide for only one residential waste hauler, rather than soliciting a new round of bids. Plaintiffs contend that the Town's failure to allow contractors to submit proposals for the exclusive hauling franchise violates Section 512 of the Houlton Town Charter, paragraph 3, which requires that all Town purchases of "property, services and contract rights which exceed five thousand dollars ($5,000.00) shall be conducted by sealed, competitive bidding." Defendant responds that the Town complied with the requirements of Section 512 when they originally sought bids in 1995. Defendant further contends that the 1995 Contract requires the Town, should the "Contract Documents or any provision thereof" be found to be invalid, to negotiate in "good faith" to conform the Contract to applicable laws, and that the Town has satisfied this duty.[6]

The Court finds Defendant's arguments persuasive. The 1995 Contract between Andino and the Town provides, in relevant part, as follows:

> 8. In the event that the Contract Documents or any provision thereof shall be found by the courts to be invalid or unenforceable, then such Documents or provision thereof shall be re-negotiated in good faith by the parties and made to conform to applicable laws. The invalidity or unenforceability of any provision of a Contract Document shall not affect the validity or enforceability of any other provision of the Document or any other contract Document provided, however, that should the courts declare the exclusive franchise provisions of this Contract to be unlawful, then the parties agree that this Contract is impossible to perform and shall be null and void with no damages due to either party and with no duty to renegotiate the terms hereof.

Bean Aff. Ex. E ¶ 8. "When the language of a contract is not ambiguous, the contract's interpretation is a question of law for the court." *SC Testing Technology, Inc. v. Dep't of Environmental Protection*, 688 A.2d 421, 424 (Me.1996), *cert. denied,*— U.S. ——, 117 S.Ct. 2432, 138 L.Ed.2d 194 (1997).

As discussed above, Plaintiffs do not dispute that the Town conducted an open bidding process for municipal waste services in 1995 and that Andino was the successful low bidder for this Contract. On March 25, 1997, the Court found that the 1995 Ordinance was most likely invalid under the dormant Commerce Clause. Because the 1995 Ordinance provided for the Contract between Houlton and Andino, the Court's decision essentially rendered the Contract unenforceable. Pursuant to the express terms of the Contract, the parties had a duty to renegotiate in good faith to bring the Contract in line with applicable law.[7] The Court is satisfied that the

---

**6.** The Town Charter provides for several exceptions to the requirement that purchases be conducted by sealed bidding; however, none are applicable to the circumstances of this case. Houlton Town Charter, Section 512, ¶ 3.

**7.** While the Contract also provides "that should the courts declare the exclusive franchise provisions of this Contract to be unlawful" the Contract will be null and void, the Court finds that

this sentence is not implicated by its Order of March 25, 1997. In its decision the Court did not declare the exclusive franchise provision, granting the Town's contractor the exclusive right to provide refuse collection, removal and disposal services for residential solid waste generators, unlawful. Rather, by holding that the 1995 Ordinance was likely unconstitutional, the Court indicated that the Contract as a whole was unenforceable insofar as it allowed multiple pri-

Town fulfilled this duty and that the pre-existing 1995 Contract between Andino and the Town is still valid. As such, the Court finds that the Town did not violate its charter and grants Defendant's Motion for Summary Judgment on Count II.

## IV. CONCLUSION

Defendant's Motion for Partial Summary Judgment is GRANTED and Plaintiffs' Motion for Partial Summary Judgment is DENIED.

*SO ORDERED.*

vate waste haulers to collect residential trash, but forced them to bring this trash to a single processing site. Indeed, in its Order of October 20, 1997, the Court expressly approved of Houl-

ton's decision to eliminate the local residential garbage collection, disposal, and processing markets and hire a single contractor to provide these services on its behalf.