No. 86,127

FRED W. McCRAW, *Appellee/Cross-appellant*, v. CITY OF MERRIAM, *Appellant/Cross-appellee*.

(26 P.3d 689)

Opinion filed July 13, 2001.

*Lewis A. Heaven, Jr.*, of Holbrook, Heaven & Osborn, P.A., of Merriam, argued the cause, and *John D. Tongier* and *Richard J. Plouff*, of the same firm, were with him on the briefs for appellant and cross-appellee.

*Sam L. Colville*, of Holman, Hansen, Colville & Coates, P.C., of Overland Park, argued the cause, and *Stephen B. Horner*, of the same firm, was with him on the briefs for appellee and cross-appellant.

*Nancy L. Ulrich*, assistant attorney general, and *Carla J. Stovall*, attorney general, were on the brief for *amicus curiae* Office of the Attorney General.

*Sandra Jacquot*, legal counsel, and *Donald L. Moler, Jr.*, executive director, were on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

LARSON, J.: This first impression appeal raises the primary question of whether a city election is required before bonds may be issued when a city desires to alter, repair, reconstruct, remodel, replace, make additions to, or furnish and equip a public building

or buildings which contain city offices. A secondary issue is whether a violation of the Cash Basis Law, K.S.A. 10-1101 *et seq.*, occurred under the facts of this case.

Factual background

The City of Merriam (City) currently utilizes a two-level building comprised of approximately 22,900 square feet built in 1961 as its combination public safety/city hall facility. This building houses municipal court and fire department, police department, administration, city council, community development, and building support offices.

A space needs study was conducted showing the current area did not meet the City's needs and concluded the City would need 31,230 square feet by 2018.

The City council in June 1999, by a 5 to 4 vote, approved renovation of the existing structure and an addition thereto for a cost not to exceed $5,276,000. A motion to have a mail-in ballot on the question was approved but later rescinded. The project was again approved by the council in August 1999, along with a motion to issue $5,000,000 in general obligation bonds.

The project includes upgrading the existing structure with new windows, roof, partitions, elevators, and mechanical system without loss of existing square footage. Additional space of approximately 17,000 square feet includes offices, council chambers, municipal court, meeting rooms, mechanical space, and ADA compliant parking and entry.

Public concerns were voiced concerning whether an election was required, and Attorney General's Opinion 99-67 was obtained in December 1999, which opined that a public election was not required before issuing bonds to pay for the contemplated project.

In March 2000, the council approved a contractor's bid to perform the expansion project and authorized the Mayor to enter into the construction project.

In early April 2000, a Merriam resident, Fred W. McCraw, filed suit against the City seeking a declaratory judgment that the expansion project required a public election and contending that ap-

proval of the contractor's bid was in violation of the Kansas Cash Basis Law, K.S.A. 10-1101 *et seq*.

In late April 2000, the contract was entered into but included a provision stating: "Performance of and payment by the City of this contract is expressly contingent upon the City issuing bonds or approving an alternate source for the funding of payment, in an amount necessary to fully pay the contract sum."

The City moved to dismiss McCraw's petition. The court construed the motion to be a motion for summary judgment because it incorporated matters outside the petition. McCraw responded and filed a cross-motion for summary judgment.

The district court granted McCraw's motion for partial summary judgment on the election count of his petition and the City's motion to dismiss concerning the cash basis counts.

The trial court held that the City was "constructing city offices" and implied that the City's argument of the interrelationship of K.S.A. 12-1736 and K.S.A. 12-1737 *may* be correct in *some* situations but that the extent of the construction involved in the Merriam City Hall project was so large that the election requirement for constructing a public building "is applicable." The district court utilized two hypothetical situations and opined that construction which is 10 times the size of the original structure would not be an addition but new construction, while a project where the expanded area would constitute only 10% of the entire final area of the completed building would be an addition.

Because of the size of the addition, the trial court concluded that the City could not issue general obligation bonds for its expansive project without obtaining the approval of the City's voters at an election. This conclusion was deemed supported by the City first referring to the project as "new construction of city offices." However, after receipt of advice of bond counsel, the project was referred to as an addition. The trial court held that changing the name did not alter the substance of the project.

As to the second count of McCraw's petition, the City's motion for summary judgment was granted with a finding the City had not violated the Kansas Cash Basis Law. This was based on evidence of the City administration that there were multiple options avail-

able to finance the project if bonds were not issued and that McCraw had the obligation to come forward with admissible evidence to support his claim and he had failed to do so.

The City appealed the trial court's decision that a public election is required. McCraw cross-appealed the ruling that a violation of the Cash Basis Law did not occur.

Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer from the Court of Appeals on our motion).

Although the issues were originally raised by a motion to dismiss, which is to be treated as a summary judgment motion, and a cross-motion for summary judgment, the standard of review of such motions is not applicable here. The facts have been essentially agreed upon, and the parties have appealed what are actually questions of law and of statutory construction over which we have unlimited review. See *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 716, 924 P.2d 1239 (1996).

In construing the statutes in issue we refer to certain basic rules of statutory construction by which we are bound:

"[T]he legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible the entire act and every part thereof. To this end, it is the duty of the court, as far a practicable to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989).

"In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia*." *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975).

"The intent of the legislature is to be derived in the first place from the words used. [Citation omitted.] 'When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determining what the law should or should not be.' [Citation omitted.] Words in common usage should be given their natural and ordinary meaning. [Citation omitted.]" *Davis v. City of Leawood*, 257 Kan. 512, 517, 893 P.2d 233 (1995).

## Analysis of legal issues relating to K.S.A. 12-1736 and K.S.A. 12-1737.

The statutes we are required to construe, K.S.A. 12-1736 and K.S.A. 12-1737, were passed in 1959 and read in applicable part:

K.S.A. 12-1736:

"Any city in this state may erect or construct, acquire by gift, purchase, condemnation or lease a public building or buildings and procure any necessary site therefor by gift, purchase or condemnation and may alter, repair, reconstruct, remodel, replace or make additions to, furnish and equip a public building or buildings."

K.S.A. 12-1737:

"The governing body of any city may, for the purposes hereinbefore authorized and provided:

. . . .

"(c) issue bonds of the city;

. . . .

"An election upon the issuance of bonds under the authority of this act shall be required for the purpose of acquiring or constructing city offices, public libraries, auditoriums, community or recreational buildings.

"When an election upon the issuance of bonds is required, the question of the issuance of such bonds shall be submitted to a vote of the qualified electors of the city at a regular city election or at a special election called for that purpose."

Attorney General opinions

These provisions have not previously been construed by our courts, but the City relies on several Attorney General opinions which opined that elections were not required where bonds were to be issued to finance alterations of an existing structure. See Att'y Gen. Op. No. 99-67 (relating to the precise facts we face); Att'y Gen. Op. 79-44; Att'y Gen. Op. 74-322. We have located language in Attorney General Opinion 77-374 which appears to express a contrary opinion that if any of the use of the addition or building was for a city office then an election would be required. As we have previously stated such opinions are at times persuasive but are not binding on this court. *City of Junction City v. Cadoret*, 263 Kan. 164, 173, 946 P.2d 1356 (1997); *State v. Scherzer*, 254 Kan. 926, 932 869 P.2d 729 (1994).

Size of addition

We likewise point out that the language of the statutes in issue does not allow us to make our determination based on the relative size of the addition to the existing structure as was considered in

the trial court's decision. This is because similar statutory provisions relating to counties provide in K.S.A. 19-15,115 for the acquisition of public buildings by a county but then in K.S.A. 19-15,116 make the amount of the bond issue determinative of whether an election is required. K.S.A. 19-15,116 follows the 12-1736 pattern by stating:

"The board of county commissioners of any county may for the purposes hereinbefore authorized and provided:

. . . .

"(c) Issue general obligation bonds of the county. If it is determined that it is necessary to issue more than $300,000 in general obligation bonds for the purposes hereinbefore authorized, such bonds shall not be issued until the question of their issuance has been submitted to a vote of the qualified electors of the county and has been approved by a majority of those voting thereon at a general election or at a special election called for that purpose."

It is clear from these provisions that had our legislature desired the question of whether an election is required to be based on the cost (size) of the project, it could also have done so, as it did with regard to the actions of counties and their public buildings. We decline to consider the relative size of the existing and resulting structures to in any way influence the construction we must make of the applicable statutes.

Wording of and interrelation of K.S.A. 12-1736 and K.S.A. 12-1737.

Both sides to this appeal make extensive definitional based statutory construction arguments which are well made, have been considered, and are briefly summarized as follows.

McCraw essentially centers his argument to uphold the trial court's decision on K.S.A. 12-1737 statutory language, stating: "[A]n election . . . shall be required for the purposes of . . . *constructing city offices*." (Emphasis added.) He contends that when you are making a building such as is proposed, it must be a "construction," and the interrelation argument of the City between 12-1736 and 12-1737 is not sufficient because 12-1737 is a more specific statute and is, therefore, controlling and requires an election. He argues that the size should not be considered (a

contention with which we agree) and concludes that the City should accede to the statutory requirement of conducting a public election.

The City focuses its argument on the fact that its project calls for the improvement of *something already existing*, making it not a "construction" for the purposes of 12-1737(h). The City argues that 12-1736 and 12-1737 must be construed *in pari materia* and harmoniously, and that all that is being accomplished is an "addition" which is "a part added to or joined with a building to increase available space." The City admits that one must "construct" an addition or alteration but that the important language in 12-1736 clearly contemplates that a city has the power to (1) erect, construct, or acquire public buildings, and (2) alter, repair, reconstruct, replace, or make additions to existing public buildings, with an election being required in the first instance but not in the last. This is based in part on the language of 12-1737(h) that states: "When an election upon the issuance of bonds is required," meaning that an election is not always required. This also means that an election need not be held when a city is not "acquiring and constructing," as was stated in the preceding paragraph of 12-1737(h). Because this project is clearly an addition, the City argues an election is not required.

There is no question that if we were to limit our focus only on the language of 12-1737(h) relating to "city offices" and decide that if any office in any area of a city's services is being acquired or constructed then an election would be required, this case could easily be decided in McCraw's favor. This, however, would be directly violative of our rule of construction that we must not consider an isolated part or parts of an act but rather must consider all parts of the applicable statutes. *Howard*, 218 Kan. 248, Syl. ¶ 2.

When both 12-1736 and 12-1737 are construed together, as we believe they must be, there are at least two (and possibly three) categories of activity that cities are authorized to perform. The City lists two categories: those relating to the initial acquisition of or construction of public buildings, and those relating to remodeling, altering, or adding to public buildings. A distinction is clearly made

between initial construction and later additions under these statutes.

The pertinent language of 12-1736 states:

"Any city in this state may erect or construct, acquire by gift, purchase, condemnation or lease a public building or buildings *and* procure any necessary site therefor by gift, purchase or condemnation *and* may alter, repair, reconstruct, remodel, replace or make additions to, furnish and equip a public building or buildings." (Emphasis added.)

With the two conjunctive "ands" the statute more specifically allows three categories of activity: (1) acquiring land for public buildings, (2) erecting or constructing public buildings, and (3) modifying existing public buildings.

The provisions of 12-1737 authorize cities to raise necessary funds for the doing of the activities enumerated in 12-1736 in eight different ways which includes to "issue bonds of the city."

The precise language of 12-1737 is:

"The governing body of any city may, for the purposes hereinbefore authorized and provided: [obviously making a direct reference to 12-1736]

. . . .

"(c) issue bonds of the city."

With the issuance of bonds authorized, the next question becomes the difficult one, for the statutes could be construed to always require, or sometimes require, elections. However, it is obvious the legislature did not intend a legal action be filed in each case.

From the language "[w]hen an election . . . is required" we can logically conclude that there were to be instances when an election was to be required and times when they were not to be required.

The most logical construction of the paragraph which requires an election "for the purpose of acquiring or constructing city offices, public libraries, auditoriums, community or recreational buildings" relates directly to the "erect or construct" or "procure any necessary site therefor" wording of 12-1736. One erects or constructs a building that does not currently exist.

This is altogether different and separate from what is done when a city "may alter, repair, reconstruct, remodel, replace or make additions to, furnish and equip a public building or buildings [presumably already in existence]." It would logically require an election in the first instance but not in the second.

This is the much more reasonable, sensible, and harmonious construction of the two statutes and the one we are told has been utilized by cities and bond counsel for the over 40 years these two statutes have been in existence.

We hold that if a city is anticipating erecting, constructing, or acquiring the necessary site for a public building or buildings of the type enumerated in 12-1737 (city offices, public libraries, auditoriums, community or recreational buildings), then an election is required.

If, however, it is the intention of a city to "alter, repair, reconstruct, remodel, replace or make additions to, furnish and equip [existing] public building or buildings," we hold that an election is not required.

The trial court erred in holding that an election was required under the facts of this case because of the disparity in the size of the project with relation to the existing structure.

It would be for the Kansas Legislature to change the law if the result we reach is deemed not to be in the public interest when compared to rules for counties in K.S.A. 19-15,116 where the cost (size) of the project is the controlling factor as to whether an election is required.

*Was the Kansas Cash Basis Law violated under the facts of this case?*

McCraw's cross-appeal alleges that the trial court erred in ruling that the Kansas Cash Basis Law, K.S.A. 10-1101 *et seq.*, was not violated when the City approved the bid of Epic Construction, Inc., and authorized the Mayor to execute the contract prior to the bond issue being properly approved.

Interpretation of a statute is a question of law over which this court retains plenary power of review. *Hamilton v. State Farm Fire & Cas. Co.* 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The trial court ruled in the City's favor on this issue based on McCraw's failure to demonstrate that the City is or will be in violation of the Cash Basis Law and further because City Administrator Eric Wade had testified there were multiple options available to the City, even if it did not issue bonds.

McCraw contends the trial court's reliance on methods by which the City might finance the addition project does not satisfy the requirements of K.S.A. 10-1113 that funds must be on hand for such purpose. McCraw further argues the contingency provision in the construction contract was not authorized by proper council vote and it was not, in addition, a stated contingency of the bidding process. He points out that because the bonds were not authorized until after the council voted to approve the project and enter into the contract, a cash basis violation existed.

The City points to the language of K.S.A. 10-1112 and K.S.A. 10-1113 relating to "creating an indebtedness" to argue that it never submitted itself to a financial obligation so that the provisions of the Cash Basis Law could be triggered. Just because a course of action may be *authorized*, the City argues, is immaterial because the City never became lawfully obligated to compensate Epic Construction for any obligations.

The City points out the contract between it and Epic specifically stated: "Performance of and payment by the City of this contract is expressly contingent upon the City issuing bonds or approving an alternative source for the funding of payment in an amount necessary to fully pay the contract sum." This is clearly a condition precedent to a valid obligation coming into existence. See *Sweet v. Stormont Vail Regional Medical Center*, 231 Kan 604, 610-11, 647 P.2d 1274 (1982). In addition, the City argues that the only evidence before the court on the summary judgment motion was that there were other city funds which could have been available for the project and McCraw did not point to anything to the contrary.

We will not discuss the conflicting dates where various actions were authorized, reauthorized, and eventually entered into, for McCraw has not demonstrated factually that any obligation was ever created which would violate our Kansas Cash Basis Law. The agreement that was executed had a binding condition precedent

that made it unenforceable against the City absent the issuance of the bonds or approval of an alternate source of funds, neither of which occurred.

This question was properly and correctly resolved by the trial court.

The City's appeal is sustained, and the trial court's ruling requiring an election is reversed.

McCraw's cross-appeal is denied, and the trial court's ruling determining that no violation of the Kansas Cash Basis Law existed is affirmed.