Karen L. Griffiths Norton City Attorney P.O. Box 10 Norton, Kansas 67654-0010
R. Douglas Sebelius Norton County Attorney P.O. Box 10 Norton, Kansas 67654-0010
Dear Ms. Griffiths and Mr. Sebelius:
You request our opinion on the following question:
"May the County of Norton require that all solid waste, as defined by K.S.A. 65-3402, generated within Norton County be disposed of exclusively at the solid waste processing facility owned and operated by the County of Norton?"
You explain that the county's solid waste disposal facility has been in continuous operation since 1974,[1] and that it is the only facility within the county currently permitted to dispose of all municipally gathered solid waste.[2] However, Norton County is presently exploring the possibility of modifying that permit to also operate a solid waste landfill. Two cities within Norton County have, for economic reasons, begun to consider hauling the solid waste generated and collected within their cities to facilities located outside of Norton County. Thus, you ask for our opinion on the authority of a county to require that all solid waste generated within that county be kept within the county, i.e.
hauled to and processed by the properly permitted county-owned and operated facilities.
Your question raises two primary issues: (1) May a city unilaterally exempt itself from a county-wide solid waste disposal plan adopted and approved pursuant to K.S.A. 65-3401 et seq.; and (2) would a county's attempt to restrict the flow of solid waste generated within its boundaries violate the commerce clause of the United States Constitution.
Issue No. 1: May a city unilaterally exempt itself from a county-widesolid waste disposal plan adopted and approved pursuant to K.S.A. 65-3401et seq.?
Kansas statutes provide cities with certain independent authority relating to solid waste disposal.[3] Counties also have specific statutes concerning solid waste disposal matters.[4] In addition to and overlaying these independent statutory authorities, K.S.A. 65-3401 etseq. provide a county-wide and cooperative approach to solid waste disposal.[5] The other statutes we have reviewed concerning waste disposal by cities or counties do not appear to be in conflict with K.S.A. 65-3401 et seq.[6] However, if there is any conflict between it and other statutes on the same matter, statutory construction rules require that where an irreconcilable conflict exists between statutes, the latest enactment will be held to supersede, repeal or supplant the earlier by implication; the later enactment must prevail.[7]
Cities' and counties' home rule authority[8] is not available to escape solid waste disposal decisions controlled and impacted by K.S.A. 65-3401et.seq,[9] because, as stated by prior Attorney General opinions, this Act is uniformly applicable.[10] Thus, we believe that both cities and counties are subject to and must follow the terms of this Act.
K.S.A. 65-3401 et seq. represent a state-wide approach to the disposal of solid waste.[11] We must read and interpret all of the statutes in this Act in pari materia.[12] This Act in general contemplates a county-wide plan for solid waste disposal and provides for review and ultimate approval of all plans for disposal by the Kansas Department of Health and Environment (KDHE).[13] No entity, including a city or county, may dispose of solid waste without having a KDHE issued permit to operate in the proposed manner.[14]
K.S.A. 65-3410 discusses the authority of counties and cities to provide for collection and disposal of solid waste generated within their boundaries:
 "(a) Each city or county or combination of such cities and counties may provide for the storage, collection, transportation, processing and disposal of solid wastes generated within its boundaries; and shall have the power to purchase all necessary equipment, acquire all necessary land, build any necessary buildings, incinerators, transfer stations, or other structures, lease or otherwise acquire the right to use land or equipment and to do all other things necessary for a proper effective solid waste management system including the levying of fees and charges upon persons receiving service. . . .
. . . .
 "(b) In carrying out its responsibilities, any such city or county may adopt ordinances, resolutions, regulations and standards for the storage, collection, transportation, processing and disposal of solid wastes which shall be in conformity with the rules, regulations, standards and procedures adopted by the secretary for the storage, collection, transportation, processing and disposal of solid wastes. . . .
 "(c) Cities or counties may contract with any person, city, county, other political subdivision or state agency in this or other states to carry out their responsibilities for the collection, transportation, processing and disposal of solid wastes."[15]
K.S.A. 65-3405 discusses how the above actions should be undertaken, and requires each county of the state, or a designated city, to submit a workable plan for the management of solid waste within the county.[16]
This plan includes input from all impacted municipalities; "[t]here shall be established in each county or group of counties cooperating in a regional plan a solid waste management committee."[17]
This committee must include representatives from the cities within the county.[18] You inform us that a K.S.A. 65-3405 planning committee exists in Norton County, and that the currently approved Norton County solid waste disposal plan was apparently cooperatively adopted by a committee that included representatives from each of the cities within that county. However, what is now being contemplated is a new plan that may not have the full support of all cities within the county. This then leads us to the issue of whether a city must agree to follow the solid waste disposal plan proposed and approved by the county and the committee, and otherwise established under K.S.A. 64-3401 et seq.[19]
K.S.A. 64-3410 authorizes cities to enter into contracts and take steps for the actual handling of waste generated within their borders. K.S.A.65-3405(i) clearly establishes the duty, power, and responsibility of the county, designated city, or group of counties to adopt and implement a solid waste management plan, designed to serve all generators of solid waste within the county. Once such a plan has been adopted and approved, K.S.A. 65-3405(p) authorizes and directs the lead county or designated city to implement the provisions contained in the approved plan. If a city wishes to dispose of solid waste in some way that differs from the county-wide cooperative plan submitted to and permitted by KDHE, it would still be required to do so in conformity with KDHE rules and regulations.[20] KDHE interprets K.S.A. 3405(b) to allow only one plan per county and believes that the only way a city could obtain approval of its plan would be if it is the official "designated city." We find no statutory or case law basis for disagreeing with the agency's interpretation of the Act. The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference. This is called the "doctrine of operative construction," and deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience.[21] K.S.A. 65-3401 et seq. does not authorize a city to unilaterally exempt itself from a properly adopted and approved county-wide solid waste disposal plan.[22]
Issue No. 2: Can a county-wide disposal plan adopted and approvedpursuant to K.S.A. 65-3401 et seq. require that all solid waste generatedwithin a county remain within that county?
The Constitution of the United States provides that Congress "shall have the power . . . to regulate Commerce with foreign Nations, and among the several States."[23] Though phrased as a grant of regulatory power to Congress, this clause has long been understood to have a negative impact upon the powers of States and political subdivisions.[24] This so called "dormant commerce clause" provision prevents state or political subdivisions from unjustifiably discriminating or placing burdens upon the interstate flow of commerce.[25]
To determine whether a particular regulation or law violates the dormant commerce clause, often requires examination of two separate matters: (1) Is the governmental entity in question regulating the market or simply participating in the market;[26] and, if it is regulating the market, (2) whether the law or local ordinance "regulates even-handedly to effectuate a legitimate local public interest."[27]
In Carbone, Inc. v. Town of Clarkstone,[28] the United States Supreme Court held that the city's ordinance regulating the interstate flow of solid waste violated the dormant commerce clause. However, this case involved restrictions upon the conduct of private entities who were in the business of operating waste disposal systems and businesses. TheCarbone Court and subsequent case law from federal district courts have distinguished this type of fact situation from instances where the governmental entity in question is itself the entity involved in and operating the waste disposal facilities and services.[29] These cases allow controls limiting the flow of solid waste when the regulating governmental entity in question has their own waste disposal facilities, based upon the "market participant" exception to the dormant commerce clause rules. Thus, we must determine if Norton County is a "market participant."
The precise contours of the market participation doctrine have yet to be established.[30] However, after issuance of the Carbone opinion and other federal cases, the Kansas Supreme Court examined the concept of "market participant" for purposes of the dormant commerce clause, inWater Dist. No. 1 of Johnson County v. Mission Hills Country Club.[31]
The Court held that a Kansas water district, which had exclusive rights to provide pressurized treated water by pipeline within the district's boundaries, did not violate the commerce clause by prohibiting water users within that district from purchasing water from any other water utility.
After finding that state statutes provided the entity with authority to have exclusive rights to provide the service in question, the Court examined the Carbone case, distinguished it, and stated in pertinent part:
 "The market participation exception to the dormant Commerce Clause applies when a municipality or state participates in a market. In such a situation, a state may favor its own citizens without violating the Commerce Clause. See White v. Mass. Council of Constr. Employers, 460 U.S. 204, 208, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983), Reeves, Inc. v. Stake, 447 U.S. 429, 435-36, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980); Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 810, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976).
. . . .
 "Here, the District contends it is a market participant, not a market regulator, and thus is entitled to the exception. We note that the District is not merely favoring in-state buyers or disfavoring out-of-state sellers. Instead, it is requiring in-state interests to patronize it.
. . . .
 "Legislative replacement does not discriminate against interstate commerce. In creating the District, Kansas has not favored in-state piped water producers over out-of-state competitors. Nor has the State handicapped other in-state and out-of-state businesses from competing against a group of local proprietors. No one enjoys a monopoly position selling piped water in Johnson County's commercial piped water market because the State has eliminated the market entirely. Not even the District remains as a seller in the market. Although the District is now the lone provider of piped water in the district, it does so as a local government providing services, not as a business selling to a captive consumer base. The District unilaterally provides service to everyone in the district."
However, the Court does distinguish between selling water and hauling trash:
 "A water distribution system is different from a trash hauling system, where public roads are used. The trash, loaded on competing companies' trucks, may traverse the same lines of transit and may even be in transit at the same time. Here, the District provides a municipal service within its boundaries. The Club is therefore trying to purchase a municipal service outside the district, indeed out of state."
Nevertheless, the Court goes on to adopt the principles of "market participation" discussed by federal courts in examining trash hauling issues wherein limits on taking trash out of a locality is allowed when the government is itself providing the disposal service:
 "The District, as a quasi-municipal corporation, is providing a governmental service; thus, there is not any 'commerce' to call the Commerce Clause into play. The services due a citizen ('inhabitant' under the Act) from the District, mandated by the legislature and rendered within the boundaries of the District, are not items of commerce."
In the situation you present, the County is the only entity operating a waste disposal facility within Norton County. Acting pursuant to K.S.A.65-3401 et seq., the County has opted to provide this governmental service. A municipality can require all its residents to use its disposal service; exclusivity in the collection and disposal of refuse is a proper exercise of a municipality's police power.[32] While we do not have the benefit of a 10th Circuit or reported Kansas case directly on point, it appears that when a county is a "market participant" rather than a "market regulator" it does not violate the commerce clause. Thus, Norton County may lawfully require that all users of waste disposal systems, acting within the county, use the county-owned and operated waste disposal facilities approved pursuant to K.S.A. 65-3401 et seq.
In summary, it is our opinion that the provisions of K.S.A. 65-3401 etseq. do not authorize a city to unilaterally exempt itself from a properly adopted and approved county-wide solid waste disposal plan. When a county acts as a "market participant" rather than a "market regulator" it does not violate the commerce clause if it requires that all disposers of waste within the county use the county-owned and operated waste disposal facilities, adopted and approved pursuant to K.S.A. 65-3401 etseq.
Very truly yours,
 PHILL KLINE Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
PK:JLM:TMN:jm
[1] The county has a permit from the Kansas Department of Health and Environment allowing it to operate its solid waste processing facility.
[2] The Cities of Almena and Lenora maintain Kansas Department of Health permits for burn piles.
[3] See also K.S.A. 12-2110 (a city which provides no refuse or solid waste collection and disposal service may regulate and license garbage or trash collectors, or both, and limit the number of licenses and pass ordinances as authorized by K.S.A. 12-2106 and 65-3410) and 12-2123 (authority of city to acquire and issue bonds to fund sites for disposal of waste).
[4] See K.S.A. 19-2677 (authority of county to grant franchises to persons engaged in the business of operating all or any part of solid waste management systems within counties).
[5] K.S.A. 65-3401 "it is the policy of the state to: (a) [e]stablish and maintain a cooperative state and local program of planning and technical and financial assistance for comprehensive solid waste management."
[6] We note that K.S.A. 65-3401 et seq. were last amended in 1997.
[7] Amundson Associations, Ltd. v. National Council onCompensation Ins., Inc., 26 Kan. App. 2d 489 (1999).
[8] Kan. Const., Art. 12, § 5 ("cities are empowered to determine their local affairs and government . . . powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self government"); K.S.A. 19-101a ["(a) The board of county commissioners may transact all county business and perform all powers of local legislation and administration it deems appropriate, subject only to the following limitations, restrictions or prohibitions. . . .")
[9] K.S.A. 65-4301 et seq.
[10] Attorney General Opinion No. 95-87. See also Attorney General Opinions No. 80-65, 80-221, and 84-97.
[11] K.S.A. 65-3402(b) defines solid waste management system to mean "the entire process of storage, collection, transportation, processing, and disposal of solid wastes by any person engaging in such process as a business, or by any state agency, city, authority, county or any combination thereof."
[12] In re W.H. ___ Kan. ______, 57 P.3d 1 (2002); McCraw v. City ofMerriam, 271 Kan. 912 (2001) (in construing statutes and determining legislative intent, several provisions of an act in pari materia must be construed together with a view of reconciling and bringing them into workable harmony if possible).
[13] K.S.A. 65-3405.
[14] K.S.A. 65-3407.
[15] Emphasis added.
[16] K.S.A. 65-4302(p) defines designated city as ""a city or group of cities which, through interlocal agreement with the county in which they are located, is delegated the responsibility for preparation, adoption or implementation of the county solid waste plan."
[17] K.S.A. 65-4305(b) allows a county that does not wish to cooperate in a regional plan to designate, by interlocal agreement, a city as the solid waste management planning authority for the county.
[18] KDHE informs us that there are currently two cities in Kansas which have been designated as the lead entity for purposes of solid waste disposal. Salina is the designated city for Saline county and Emporia is the designated city for a regional plan area.
[19] Assuming that KDHE would approve the proposed new plan.
[20] See K.S.A. 65-4310(b) ("In carrying out its responsibilities, any such city or county may adopt ordinances, resolutions, regulations and standards for the storage, collection, transportation, processing and disposal of solid wastes which shall be in conformity with the rules, regulations, standards and procedures adopted by the secretary for the storage, collection, transportation, processing and disposal of solid wastes.") and K.S.A. 65-4309 (a)(5) ("It shall be unlawful for any person to: . . . (5) Store, collect, transport, process, or dispose of solid waste contrary to rules and regulations, standards or orders of the secretary. . . .")
[21] Hartford Underwriters Ins. Co. v. State Dept. of Human Resources, ____ Kan. App. 2d _____, 32 P.3d 1146 (2001).
[22] K.S.A. 65-4305(q) allows a county party to a regional solid waste disposal plan to withdraw from a plan, but only under certain circumstances. There appears to be no similar provision applicable to cities wishing to unilaterally withdraw from an approved county-wide waste disposal plan.
[23] U.S. Const. Art. I, § 8, cl. 3.
[24] See Blue Circle Cement, Inc. v. Board of County Comm's,27 F.3d 1499, note 13 (10th Cir. 1994).
[25] American Target Advertising, Inc. v. Giani, 199 F.3d 1241,1254 (10th Cir. 2000); Oregon Waste Sys., Inc. v. Dpt. of Envtl.Quality, 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).
[26] See USA Recycling, Inc. v. Town of Babylon, 66 F.3d 1272, 1281 (2d Cir. 1995), cert. denied 517 U.S. 35, 116 S.Ct. 1419, 134 L.Ed.2d 544
(1996).
[27] United Haulers Assoc., Inc. v. Oneida-Herkimer Solid WasteManagement Auth., 261 F.3d 245, 252-253 (2d Cir. 2001) cert. den.534 U.S. 1082, 122 S.Ct. 815, 151 L.Ed.2d 699 (2002); See also WasteManagement of Alameda County, Inc. v. Biagini Waste Reduction Systems,Inc., 63 Cal.App.4th 1488, 74 Cal.Rptr.2d 676 (1st Dist. 1998).
[28] Carbone, Inc. v. Town of Clarkstone, 511 U.S. 383,114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).
[29] SSC Corp. v. Town of Smithtown, 66 F.3d 502 (2d Cir. 1995), cert.denied 116 S.Ct. (1996); USA Recycling, Inc. v. Town of Babylon,66 F.3d 1272 (2d Cir. 1995), cert. denied 116 S.Ct. 1419 (1996).
[30] Richard Roddewig Glenn C. Sechen, "The Second CircuitDefines the Limits of Carbone," The Urban Lawyer, Vol. 28, No. 4, 847, 854 (1996); Stanley E. Cox, "Garbage In, Garbage Out: Court Confusionabout the Dormant Commerce Clause," 50 Okla. L. Rev. 155, 156-58 (1997).
[31] 265 Kan. 355 (1998).
[32] City of Princeton v. Stamper, 466 S.E.2d 536, 195 W. Va. 685
(1995).